Rosemary Ann CHACON, Appellant,

v.

Robert Carlos CHACON, Appellee.

No. 08–97–00275–CV.

Court of Appeals of Texas,
El Paso.

June 18, 1998.

R.C. 'Eric' Augesen, Odessa, for Appellant.

Matt L. Thomas, Law Offices of Matt L. Thomas, Odessa, for Appellee.

Before BARAJAS, C.J., and LARSEN and McCLURE, JJ.

## OPINION

McCLURE, Justice.

At issue in this ongoing custody dispute is whether the report of a Court Appointed Special Advocate ("CASA") volunteer [1] constitutes a social study for purposes of the Texas Family Code. Answering this question in the negative, we affirm. [2]

## FACTUAL SUMMARY

This is the second appeal involving the Chacons' divorce. In a prior unpublished opinion, we reversed and remanded a default judgment taken against Rosemary.

The Chacons were married on July 10, 1993 and separated in May of 1994 when Rosemary moved with the parties' infant daughter, Jessica, to Iowa. On July 27, 1994, Robert filed for divorce. The custody case proceeded to a bench trial on March 18 and 19, 1997. It was undisputed that between the date of separation and the date of trial, Robert had visited with Jessica only once. [3] What was hotly contested, however, was whether Robert had visited only once because of a lack of interest in the child or because Rosemary prevented him from visiting. Robert admitted that since Jessica had not seen him in more than two years, she did not know him well. Not surprisingly, tensions were running high during the testimony. After the first day of the hearing, the trial court appointed a CASA volunteer to pick up Jessica from Rosemary, to take her to Robert's home for a two hour visitation, and to observe the visitation:

> The Court at this time is going to grant some interim visitation. I'm not granting

any relief. I'm not stating how I'm going to rule one way or another. I just think in this case the young lady who is 3–and–a–half needs to see her father for a period of time. We have a Casa worker here. I should say our Casa director, who is Laura Gonzales. Ms. Gonzales is in the yellow outfit there. Laura is going to get some information. She is not going to be the Casa worker that you're going to meet with. She is not going to be the one that you—everyone needs to call concerning this case. I've said her full name and I did not mean to do so, but I do not expect anyone to call, give any threats, questions or inquiries whatsoever. If you have any questions or inquiries, that needs to come through your attorney for your respective sides. She is here for one purpose and one purpose only, to get the names of the parties and the addresses.

> I'm going to have the child, the minor child who is the subject of this suit, picked up by another Casa worker at 6:00 p.m. tonight. It will be the house—ma'am, at your house back there if you'll introduce yourself to Ms. Gonzales. When we're through here in just a moment, give her your address and phone number so she'll know where the child is. The child is to be picked up at 6:00 p.m. and transported to the residence of Mr. Chacon. Robert Chacon is then to have visitation for two hours beginning at the time the child arrives at his residence. That way if there's some problem in getting the child there, the child's taking a nap, doesn't get to your place until 6:30 you will have the child until 8:30. The Casa volunteer in this particular case

1. The Texas Family Code provides for the creation of Court Appointed Volunteer Advocate Programs, which were originally designed as volunteer-based, nonprofit programs to provide advocacy services to abused or neglected children with the goal of obtaining a permanent placement for a child that was in the child's best interest. TEX.FAM.CODE ANN. § 264.601 (Vernon 1996). The 1997 Legislative amendments expanded the role of the CASA volunteers and authorized their appointment as volunteer advocates on behalf of a child in suits filed by a governmental entity and as guardians ad litem in Title V proceedings. TEX.FAM.CODE ANN. § 107.031 (Vernon 1996). The CASA volunteer must receive the court's approved training and

be certified by the court to participate in court hearings as a volunteer advocate. TEX.FAM.CODE ANN. § 107.031(a).

2. We limit our consideration of whether the CASA report constitutes a social study to the particular study before us. The issue of whether a certified CASA volunteer qualifies under Section 107.052 standards for conducting social studies is not before us. TEX.FAM.CODE ANN. § 107.052.

3. This visit took place over several days in December of 1994 when Robert traveled to Iowa. Jessica was thirteen months old at the time.

will remain and just generally observe. She is not to get involved. She's not there to pry into your family. *She's going to be there to observe and just give me a report.* Okay? [Emphasis added].

Although it is not clear from the record, it appears that the following morning prior to trial, the CASA volunteer submitted a report to the court regarding the supervised visitation. The existence of the report was announced as follows:

COUNSEL FOR ROBERT: Your Honor, I have some rebuttal. I have a videotape to show the Court.

COUNSEL FOR ROSEMARY: I will object to any videotape. That was not produced through the discovery process. I have not had a chance to see that, so I will definitely object to that.

COUNSEL FOR ROBERT: It was taken last night, and there was no reasonable opportunity to produce it to Counsel until it was available here this morning.

THE COURT: I will have a report come forward. This is a report generated this morning—generated last night after observations were made by the Casa worker that was—volunteered on that case.

Based upon that, I will have to sustain his objection to the videotape. The Casa report pretty much says it all.

The report was not mentioned again until final argument. Robert's attorney did not mention it directly, instead referring to the successful visitation:

I am happy to learn that the visitation that happened last night not only went well for everyone concerned, especially Jessica, but evidences that that should not be a concern of this Court. That child warmed up to Mr. Chacon, the family, and recognized him as her daddy and the rest of the family. She didn't evidence any kind of apprehension at all, even from the very beginning, the get-go of that visitation. This, again, corroborates Mr. Chacon's testimony as to those visits at Christmastime, I think, in 1994 or so where the child did the very same thing. This child is not going to be placed in any kind of harm or fear by now living with the Chacons.

Rosemary's counsel did directly refer to the report in his closing statements:

As far as—also, I reviewed the report on the visitation last night. I—obviously, it does say that it seemed to go well, but I would submit that you cannot go by just one, two-hour visit in making a decision about a child that age. It's a major decision in her life after she has not been with her father for two and a half years.

From the report, it is clear that the situation went well because—I am sure part of the reason was she was given gifts and candy. That made her feel good, of course. All children, especially that age, love gifts and candy.

Also, the child knew that this was only a temporary thing, and that she would be back with her mother in just a few hours.

And, of course, obviously, Mr. Chacon's family was on their best behavior, because they knew they were being watched. They knew there would be a report made of what they were doing.

I think it would be really wrong to go—to make a decision based solely on one, two-hour visit that seemed to go well.

I think it is clear, and I think the Court knows that yesterday morning in Court the child was very upset about spending time with a person she didn't know and being separated for even a short time from her mother. I think that that—it would be really wrong and really hurtful for the child to be separated on a long-term basis from her mother.

There is no other reference to the report anywhere in the record.

The trial court appointed the parties joint managing conservators with Robert having the exclusive right to establish the legal residence and domicile of Jessica. Rosemary appeals the decree. The sole issue presented is whether the trial court erred in considering the report of the CASA volunteer. Rosemary argues that the report was a social study and as such, was untimely produced to her pursuant to Section 107.055 of the Texas Family Code.

## STATUTORY PROVISIONS

■ A court may order the preparation of a social study into the circumstances and condition of a child and of the home of any person requesting managing conservatorship or possession of the child. TEX.FAM.CODE ANN. § 107.051(a). The social study may be performed by a state agency or a person appointed by the court. Standards for conducting the social study are outlined in Section 107.052:

### § 107.052. Standards for Conducting Social Study

(a) The court may appoint an investigator to conduct the social study required by this section who has the qualifications established by the rules of the Department of Protective and Regulatory Services providing minimum qualifications for persons who may conduct social studies. If the Department of Protective and Regulatory Services or another governmental entity is appointed, the person who conducts the investigation and makes the report must also have those qualifications.

(b) A study made under this section shall comply with the rules of the Department of Protective and Regulatory Services establishing minimum standards, guidelines, and procedures for social studies or the criteria established by the court.

(c) The social study shall contain any history of physical, sexual, or emotional abuse suffered by the child.

The report is to be made a part of the record in the suit. TEX.FAM.CODE ANN. § 107.054. As for its admissibility, Section 107.055 controls:

### § 107.055. Introduction of Report at Trial

(a) Disclosure to the jury of the contents of a report to the court of a social study is subject to the rules of evidence.

(b) In a contested case, the agency or person making the social study shall furnish copies of the report to the attorneys for the parties before the earlier of:

(1) the seventh day after the date the social study is completed; or

(2) the fifth day before the date of commencement of the trial.

(c) The court may compel the attendance of witnesses necessary for the proper disposition of the suit, including a representative of the agency making the social study, who may be compelled to testify.

Since the report was not furnished until the second day of trial, Rosemary argues that it may not be considered because the notice requirements of Section 107.55(b) were not met.

## ADMISSIBILITY AND DISCLOSURE

■ We pause to emphasize that while the CASA report was made a part of the record, it was never formally offered into evidence, much less admitted. Both the statute and the case law interpreting it distinguish between a bench trial and a jury trial with regard to the use of a social study. The social study is to be made a part of the record in every case and need not be tendered into evidence. *Green v. Remling,* 608 S.W.2d 905, 907 (Tex.1980). Thus, in a bench trial, the court may consider the report regardless of whether it is formally introduced into evidence. A party is entitled to call as a witness the author of the report to attack the accuracy of the information included or the conclusions drawn therefrom. TEX.FAM. CODE ANN. § 107.055(c). However, the Legislature never intended that the trial court *sua sponte* require the author's attendance at the hearing. *Green,* 608 S.W.2d at 908. Only in a jury trial do the traditional rules of evidence apply. As the Supreme Court noted in *Green,* the statute speaks in terms of "disclosure":

Consideration of the contents of the report by the jury on the other hand is a different matter. [Former] Section 11.12(c)[4] provides: 'The report shall be made a part of the record; however, the disclosure of its contents to the jury is subject to the rules of evidence.' This provision clearly indicates that a different rule applies to the consideration of the report when the hearing is before the judge and when it is

4. Former Section 11.12 was the predecessor of Section 107.055, enacted by 74th Legis., Reg. Sess. (1995), ch. 20, § 1, eff. April 20, 1995; amended by 74th Leg., Reg.Sess. (1995), ch. 751, § 15, eff. Sept. 1, 1995.

before the jury. We note that the statute uses the term 'disclosure' rather than admissibility. The inclusion of the social study in the 'record' makes it unncessary to formally introduce it in evidence. It is before the court for all purposes, but only those portions of the study which are admissible under the rules of evidence may be disclosed to the jury.

*Id.* at 909–10. Thus, the fact that the CASA report was not admitted into evidence does not resolve the issue.

### CASA REPORT AT ISSUE

■ We must therefore determine whether the CASA report constituted a social study as defined by the Family Code. We conclude that it does not. We begin by setting forth in its entirety the contents of the one-page report:

March 18, 1997

*IN THE INTEREST OF JESSICA CHACON*

As requested by the court, CASA transported Jessica Chacon from her mother's residence, 702 West 21st Street to Robert Chacon's residence, 5815 West 32nd Street.

Jessica is a talkative child of 3½. She hesitated only a moment before she was comfortable to go with me to see her father.

On arriving, her father, Robert Chacon, met us at the gate. She held on to me until we entered the house. She immediately seemed to be comfortable with her father, Robert Chacon; his mother, Isabelle; brother, Rueben [sic]; and two male friends, David Bell and Michael Smith. Rueben [sic] Sr., Jessica's grandfather came in shortly after we arrived.

Interaction between Jessica and her father was very favorable. She did not hesitate to be picked up by him or to be with him. She is a friendly child and they (all) got on the floor and played. The house was extremely clean. The windows were even spotless. Rocia Chacon, Jessica's aunt, came and brought her three sons who are 6, 4, and 3. Her husband is Robert Chacon's brother, Javier. The two younger boys and Jessica played well together.

Mr. Chacon had bought an Easter basket and he and Jessica had fun taking it apart and investigating all the goodies. Rueben [sic] had bought a large bear for her and she loved it. She said she would take some of the candy to her mommy, but other than that, she never mentioned leaving until I said it was time to go.

Rueben [sic] Jr. took videos and pictures were being snapped all evening. Mrs. Chacon, Robert's mother, patted her heart and said their prayers were answered, they were getting to be with their granddaughter.

As we left Robert Chacon carried Jessica to my car and told her he loved her and she said, 'I love you too'.

My observation was that this family is a very close knit, loving family, and Jessica was happy to be there. I asked if she would like to see her father again and she said 'yes'.

Sincerely,

LaVon Darville, CASA Volunteer

Laura Gonzales, CASA Executive Director

As we have noted, the Family Code sets forth specific requirements that must be met in order for a social study to be conducted, such as the requirement that the social worker meet the minimum qualifications established by the rules of the Department of Protective and Regulatory Services. TEX. FAM.CODE ANN. § 107.052(a). The study must contain any history of physical, sexual, or emotional abuse suffered by the child. TEX.FAM.CODE ANN. § 107.052(c). This is particularly significant here, as Rosemary contended at trial that Robert had physically abused both her and Jessica.

The Family Code directs that the social study be conducted "into the circumstances and condition of the child and of the home of any person requesting managing conservatorship or possession of the child." TEX.FAM. CODE ANN. § 107.051(a). The study shall comply with the rules of the Department of Protective and Regulatory Services establishing minimum standards, guidelines, and procedures for social studies or the criteria established by the court. TEX.FAM.CODE ANN. § 107.052(b). Generally speaking, the pur-

pose of a social study is to interview the litigants and those individuals with knowledge of relevant facts, such as extended family members, neighbors, scout leaders, teachers, baby sitters, day-care providers, doctors, sports coaches, and other individuals who have had the opportunity to observe the parenting abilities of the litigants, the relationship between the child and the parents, the living arrangements at both households, and the plans each litigant has adopted for the day-to-day caretaking of the child. It is designed to be comparative in nature, that is to compare the circumstances and conditions of all individuals seeking managing conservatorship or possession of a child, and to make recommendations to the court regarding the best interest of the child. The Family Code does not detail the individuals to be interviewed nor the issues to be covered by the report for the simple reason that the relevant facts to be developed will largely depend on the disputed issues and the theory or theories which will be litigated.[5] Further, because the trial court has great discretion in determining the overriding best interest of the child, the Legislature has deferred the development of appropriate standards and criteria to either the appropriate state agency or to the court itself. TEX.FAM.CODE ANN. § 107.052(b).

The report at issue contained merely the observations of the CASA volunteer concerning the brief supervised visitation between Jessica, Robert and his family. It was not comparative in nature, and did not purport to address the relationship between Jessica, Rosemary and her family or their living conditions and circumstances. It did not address the alleged history of domestic violence.[6] It did not detail whether Robert's home would accommodate Jessica's needs, whether she would have her own bedroom, or even which of Robert's family members lived there. Because the observations recorded during the supervised visitation do not constitute a formal social study, we conclude the notice requirements of Section 107.055 do not apply.

## WAIVER

■ In any event, Rosemary never objected to the trial court's appointment of the CASA worker, nor to the court's instruction to the CASA executive director that a report be filed. She never objected to the court's consideration of the report.. The record is devoid of any complaint that the report constituted an untimely social study or that if it did not constitute a social study, it constituted rank hearsay. Inasmuch as there was no objection made, no error has been preserved for review. TEX.R.APP.P. 33.1(a); *Wimpey v. Wimpey,* 662 S.W.2d 680, 682 (Tex.App.—Dallas 1983, no writ). Accordingly, Rosemary's sole issue is overruled and the judgment affirmed.

---

5. Theories of a custody case may range from parental errors in judgment, sins of commission or omission or improper parental priorities, to abuse, neglect or disinterest. Rosemary's theory was that Robert had committed family violence and that he had been disinterested in Jessica. Robert's theory was that Rosemary had prevented his visitation and had actively attempted to "rob [Jessica] of a relationship with her father."

6. In his findings of fact and conclusions of law, the trial court specifically found that Robert had "not committed any acts constituting family violence...." That finding has not been challenged on appeal.