COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-278-CV
 
 
 
IN THE INTEREST OF C.P. AND 
S.P., CHILDREN
 
 
 
------------
 
FROM THE 323RD DISTRICT COURT 
OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Candy 
P. appeals from the trial court’s order terminating her parental rights in her 
children, C.P. and S.P.  As grounds for termination, the trial court found 
that appellant had
  
(1) 
knowingly placed or allowed the children to remain in conditions or surroundings 
that endangered their physical or emotional well-being;
 
(2) 
engaged in conduct or knowingly placed the children with persons who engaged in 
conduct that endangered their physical or emotional well-being;
 
(3) 
had her parent-child relationship terminated with respect to another child based 
on a finding that her conduct was in violation of family code section 
161.001(1)(D) or (E) or substantially equivalent provisions of the law of 
another state; and
 
(4) 
constructively abandoned the children.
   
See 
Tex. Fam. Code Ann. § 
161.001(1)(D), (E), (M), (N) (Vernon 2002).
        Appellant 
does not challenge these findings.  Instead, in a single issue, she 
challenges the factual sufficiency of the evidence to support the trial 
court’s finding that termination is in the children’s best interest.  
We will affirm.
        In 
proceedings to terminate the parent-child relationship brought under section 
161.001 of the family code, the petitioner must establish one or more of the 
acts or omissions enumerated under subdivision (1) of the statute and must also 
prove that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001 (Vernon 
2002); Richardson v. Green, 677 S.W.2d 497, 499 (Tex. 1984); Swate v. 
Swate, 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied).  
Termination of parental rights is a drastic remedy and is of such weight and 
gravity that due process requires the petitioner to justify termination by clear 
and convincing evidence.  Tex. Fam. 
Code Ann. §§ 161.001, 161.206(a); In re G.M., 596 S.W.2d 846, 
847 (Tex. 1980).
        The 
higher burden of proof in termination cases alters the appellate standard of 
factual sufficiency review. In re C.H., 89 S.W.3d 17, 25 (Tex. 2002).  
“[A] finding that must be based on clear and convincing evidence cannot be 
viewed on appeal the same as one that may be sustained on a mere 
preponderance.”  Id.  In considering whether the evidence of 
termination rises to the level of being clear and convincing, we must determine 
“whether the evidence is such that a factfinder could reasonably form a firm 
belief or conviction” that the grounds for termination were proven.  Id.  
Because appellant does not challenge the trial court’s findings that she 
violated several of the conduct provisions of section 161.001(1), our inquiry 
here is whether, on the entire record, a factfinder could reasonably form a firm 
conviction or belief that the termination of appellant’s parental rights would 
be in the best interest of C.P. and S.P.  Id. at 28.  
Nonexclusive factors that the trier of fact in a termination case may use in 
determining the best interest of the child include:

        (1)    the 
desires of the child;
 
        (2)    the 
emotional and physical needs of the child now and in the future;
 
        (3)    the 
emotional and physical danger to the child now and in the future;
 
        (4)    the 
parental abilities of the individuals seeking custody;
 
        (5)    the 
programs available to assist these individuals to promote the best interest of 
the child;
 
        (6)    the 
plans for the child by these individuals or by the agency seeking custody;
 
        (7)    the 
stability of the home or proposed placement;
 
        (8)    the 
acts or omissions of the parent which may indicate that the existing 
parent-child relationship is not a proper one; and
 
        (9)    any 
excuse for the acts or omissions of the parent.
       
Holley 
v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976).
        In 
this case, the record shows as follows.
        Desires of the children: C.P. and S.P. were 
eight and six years old, respectively, at the time of trial.  The children 
seemed happy to see appellant at the visitations she attended, but appellant 
often failed to attend scheduled visits.  For example, appellant missed 
scheduled visitations on Valentine’s Day, C.P.’s birthday, and several other 
dates in the months before the August 2004 trial on termination.  Appellant 
testified that her missed visits were due to car trouble or being in jail.  
The children became so anxiety stricken and upset as a result of appellant’s 
repeated failures to attend scheduled visits that CPS reduced the number of 
visits from four times to two times per month.  This seemed to work a 
little better for both appellant and the children.  But S.P. once banged 
his head against the wall in anger over appellant’s failure to work at her 
service plan so that the children could return home.
        Emotional and physical needs of the children now and 
in the future:  S.P. has “extreme behavioral problems” that are 
eased, but not extinguished, with appropriate medications.  S.P. also has 
“major anger problems” that even his licensed foster parents are having 
difficulty managing.  Appellant acknowledged that S.P. has “hyperactivity 
disorder,” but blamed it on his being placed in foster care.  She 
contended that both C.P.’s and S.P.’s only need was to be with her.  
Appellant also testified that she would rather the children be with their 
biological father, who had relinquished his parental rights, than be adopted, 
even though she acknowledged that their father probably could not meet their 
needs because he had so many other children.
        The 
CASA advocate assigned to this case stated in her report that C.P. internalizes 
her feelings and appears to function best when her surroundings are orderly and 
structured.[2]  The record shows, however, that 
appellant’s home was anything but orderly and structured.  Instead, two 
home visits by CPS case workers revealed dirty children, trash on the floor 
throughout the home, no running water, a backed-up toilet, feces all over the 
bathroom floor, toilet, and bathtub, a dog dying on the floor, glass and bottle 
caps in the yard, and appellant with no way to pay the rent.  CPS also 
received a referral that C.P. had lice.  Although the children were 
“laughing and talking and running around” on one of these visits, the case 
worker believed the children were at risk and had concerns about their 
care.  Appellant cleaned the bathroom and picked up most of the trash, but 
only after being instructed to do so by the case worker.
        School 
records also showed that C.P. had missed twenty-five days of school during a 
single school year.  She stated that she went “junking”[3] with appellant when she stayed home from school.  
Conversely, appellant testified that she had taken the children junking only 
three times and that it was after school.
        Emotional and physical danger to the children now and 
in the future:  The conditions at home and at school that we have 
just discussed pose present and future dangers to the children.  In 
addition, appellant acknowledged that S.P. had “real bad cavities” in his 
teeth, so she took him to the hospital.  She did not take S.P. to the 
dentist, however, because she was trying to get Medicaid.  Instead, she 
told a case worker that she had put Orajel on S.P.’s teeth.
        Further, 
appellant admitted to shop lifting with her children, and she used illegal drugs 
and engaged in prostitution, all of which resulted in frequent incarcerations 
and kept her from being a stable caregiver for her children.  The 
children’s younger sister, M.N.A., tested positive for cocaine at birth, and 
appellant has had her parental rights terminated as to three children, including 
M.N.A., besides C.P. and S.P.
        Despite 
these problems, appellant persisted in her belief that “everything was fine” 
and that C.P. and S.P. were removed from her home because she was poor and had 
once accepted food from a CASA volunteer.  Appellant stated, “as far as 
me doing something wrong, no, it’s not my fault.  To me it’s a money 
thing. . . . [t]o take my kids and sell them, adopt them . . . . [j]ust because 
Mommy is poor.”  She also blamed her cocaine use on CPS, contending that 
“[y]ou-all drove me to it.”
        Parental abilities of the individuals seeking custody: 
 Sandy Fernandez, one of appellant’s former CPS case workers, testified 
regarding her concern about appellant’s lack of ability to meet the 
children’s disciplinary, educational, and safety needs.  Further, 
although appellant played and interacted with the children, she did not, 
according to Fernandez, demonstrate a loving, motherly bond with them.  
Fernandez also opined that appellant cannot cope with S.P.’s anger 
problems.  In her opinion, termination of appellant’s parental rights 
would be in the children’s best interest.
        Christine 
Patron, appellant’s case worker at the time of trial, testified that 
appellant’s relationship with C.P. and S.P. was more of a friend-friend 
relationship than a parent-child relationship.  Patron also testified that 
appellant was in an ongoing cycle of having her children removed from the home, 
completing some parts of her service plan in order to get her children back, 
having the children returned to her, then removed again, and so on.  Patron 
did not believe anything would change if appellant were given more time; 
therefore, she opined that termination of appellant’s parental rights would be 
in the children’s best interest.
        Programs available to assist these individuals to 
promote the best interest of the children: Appellant has an eight-year, 
extensive history with CPS, and she was in jail again just one week before 
trial.  Fernandez and Patron testified that appellant consistently refused 
to work her service plans and that she showed no improvement from the services 
in which she did participate.  Although C.P. and S.P. were removed from 
appellant’s home most recently in September 2003, appellant conceded that she 
did not participate in any task on her service plan until June 2004, two months 
before the trial on termination began.  The CASA advocate’s report to the 
trial court states that appellant “has a lengthy history with DFPS[4] during which she has been uncooperative or minimally 
cooperative, at best.  This Advocate’s direct contact with [appellant] 
has been limited by her volatile demeanor and unwillingness to communicate.”
        Appellant’s 
Medicaid has run out, she has failed to apply for supplemental security income, 
and she quit therapy because she said it was too stressful for her.  She 
explained that the therapist only wanted to talk about her children, and she 
thought the therapy sessions should be about her.  Further, although she 
had no monthly income from any source, appellant was not interested in help 
getting a job.  Instead, she preferred junking.
        Plans for the children by the individuals or agency 
seeking custody; stability of the home or proposed placement: DFPS’s 
plan for the children is adoption.  Patron testified that she believed the 
children were adoptable and that DFPS was looking for a family that would adopt 
both of them, possibly along with their older brother, M.A.C., Jr. [5]  
Appellant could not articulate a plan except that she wanted her children 
back.  She did testify, however, that the house she lived in at the time of 
trial was a nice home and a “big improvement” over the house in which she 
had lived with the children in 2003, that she had more income, and that the home 
has running water and food.
        Meanwhile, 
the record shows that, since the children’s removal from appellant’s home in 
September 2003 and placement in foster care, significant efforts have been made 
to address their academic deficits and S.P.’s behavioral and anger 
problems.  Patron testified that, in addition to his foster parents, 
therapists were working with S.P. to resolve his anger problems.  The 
children’s CASA advocate reported that S.P. had been placed in a residential 
treatment facility in June 2004 due to “excessive behaviors” such as head 
banging, hitting C.P., knocking down children at school, and being abusive to 
his foster parents.  He was released after several weeks, and his newly 
prescribed medications appeared to be effective in lessening his impulsive 
behaviors.  S.P. had also received much-needed dental work while in foster 
care.
        C.P. 
was treated for lice after being place in foster care.  Both she and S.P. 
were receiving regular academic tutoring in an effort to enable them to work at 
their respective grade levels.  S.P. was scheduled to repeat kindergarten 
due to his extreme difficulties in school.
        Having 
reviewed the entire record, we hold that the evidence is such that a factfinder 
could reasonably form a firm belief or conviction that termination was in the 
children’s best interest.  See C.H., 89 S.W.3d at 25, 28.  
“While parental rights are of constitutional magnitude, they are not 
absolute.  Just as it is imperative for courts to recognize the 
constitutional underpinnings of the parent-child relationship, it is also 
essential that emotional and physical interests of the child not be sacrificed 
merely to preserve that right.”  Id. at 26.  Accordingly, we 
overrule appellant’s sole issue and affirm the trial court’s judgment.
   
  
                                                          PER 
CURIAM
 
 
  
PANEL F:   CAYCE, 
C.J.; LIVINGSTON and HOLMAN, JJ.
 
DELIVERED: May 19, 2005

 
NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
The social study report must be made a part of the record.  Tex. Fam. Code Ann. § 107.054 (Vernon 
2002).  Therefore, in a bench trial the court may consider the report 
regardless of whether it was formally introduced into evidence.  See 
Chacon v. Chacon, 978 S.W.2d 633, 636 (Tex. App.—El Paso 1998, no pet.).
3.  
Appellant described “junking” as collecting and reselling junk metal and 
items found at garage sales and in dumpsters.
4.  
The Department of Family and Protective Services.
5.  
Appellant’s parental rights in M.A.C., Jr. had been terminated eight months 
before the trial on termination involving C.P. and S.P.