In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00045-CV


______________________________





IN RE:


CARLA KAYE VILLANUEVA








 


Original Mandamus Proceeding







 
 



Before Morriss, C.J., Carter and Moseley, JJ.

Opinion by Chief Justice Morriss



O P I N I O N


 Carla Kaye Villanueva, proceeding pro se below, brought a divorce action and suit affecting
the parent-child relationship (SAPCR). She also filed an affidavit of inability to pay costs. (1) Her
husband filed a waiver of service, in which he waived his right to make an appearance in the case
and his right to further notice in the proceedings. So, the matter below is an uncontested divorce and
custody case.

 Before the husband's waiver, on February 23, 2009, the trial court sua sponte entered its order
appointing ad litem and compelling home study. (2) The order does not recite that there was any
hearing or any evidence taken to support the order, and we find in the record no evidence that any
hearing was held or any evidence was taken. In that order, the trial court found that "it is in the best
interest of the child[ren] that an attorney ad litem be appointed"; that order names James H.
Verschoyle as attorney ad litem and provides that the parties pay Verschoyle in advance a fee of
$750.00. The order also directed Charlene Raney perform a social study of the home within forty-five days of the order and directed the parties to pay Raney an unspecified reasonable fee in advance
in equal shares. 

 The attorney ad litem filed an answer on behalf of the children March 4, 2009. Villanueva
objected to the trial court's order March 18, 2009. In response, again with no recitation or indication
that any hearing was held or evidence received relative to Villanueva's objections, the trial court
overruled her objection to the social study and abated (3) her objection to the appointment of the
attorney ad litem. In abating her objection to the appointment of the attorney ad litem, the trial court
stated, "If [Villanueva] is able to present the necessary information, the objection will be sustained. 
If not, the Court will continue the hearing and overrule the objection." The effect of the trial court's
ruling is that the social study order is still in effect and that the attorney ad litem is still appointed,
the latter to be made the subject of a deferred ruling, which would come after a later hearing or a
later presentation of information by Villanueva. (4) 

 Villanueva argues that the trial court cannot make this order without evidence that such
appointments are necessary. Her argument is that, since the divorce and custody issues are
uncontested and Villanueva's parental rights are not being challenged, the trial court was without
authority to make these appointments, especially considering that she is unable to pay for them. She
asks this Court to issue a writ of mandamus directing the trial court to vacate its order appointing the
attorney ad litem and providing for a home study. We address the issues presented by describing the
trial court's duties under the Texas Family Code, outlining the trial court's authority to appoint an
attorney ad litem, and outlining its authority to order a social study, exploring the considerations the
trial court must undertake as to each determination. We then examine the trial court's reasoning here
for appointing the attorney ad litem and ordering a home study in terms of those considerations and
in terms of the effect of Villanueva's indigent status. Finally, we put the analysis in the framework
to determine whether mandamus will lie. After doing so, we will conditionally grant mandamus
relief. 

(1) Duty of the Trial Court in Divorce and SAPCR

 A petition in a suit to dissolve a marriage involving children under the age of eighteen must
include a SAPCR. (5) See Tex. Fam. Code Ann. § 6.406(b) (Vernon 2006); Brown, 917 S.W.2d at
361-62 (in divorce proceeding in which minor children are involved, trial court must dispose of all
issues before it, including questions of conservatorship, possession, and access to minor children and
child support). The Texas Family Code allows for parties to waive the issuance or service of process
as did Villanueva's husband here. Tex. Fam. Code Ann. § 6.4035 (Vernon 2006).

 Generally, a final order in a SAPCR must include a parenting plan. See Tex. Fam. Code
Ann. § 153.603 (Vernon 2008). The Texas Family Code permits the parties to submit an agreed
parenting plan, but that agreed plan must still be approved by the trial court. See Tex. Fam. Code
Ann. § 153.007 (Vernon 2008). In determining whether to approve the proposed parenting plan, the
trial court is called on to determine whether the plan is in the best interest of the child or children. 
Tex. Fam. Code Ann. § 153.007(b). This mandate is consistent with the Texas Family Code's
general pronouncement that the child's best interest is to be "the primary consideration" in
determining issues of conservatorship and possession of and access to the child. Tex. Fam. Code
Ann. § 153.002 (Vernon 2008).

(2) Authority to Appoint Attorney Ad Litem

 Again, our inquiry here is a limited one that addresses only the payment of the appointed
attorney ad litem for the work performed before the trial court's decision to hold the appointment
order in abeyance. The trial court is given discretionary authority to appoint an attorney ad litem in
certain cases and must take certain factors into consideration in deciding whether to make such
appointments:

 (a) In a suit in which the best interests of a child are at issue, other than a suit filed
by a governmental entity requesting termination of the parent-child relationship or
appointment of the entity as conservator of the child, the court may appoint one of
the following:

 

 (1) an amicus attorney;

 

 (2) an attorney ad litem; or

 

 (3) a guardian ad litem.

 

 . . . .

 





 (b) In determining whether to make an appointment under this section, the court:

 

 (1) shall:

 

 (A) give due consideration to the ability of the parties to pay
reasonable fees to the appointee; and

 

 (B) balance the child's interests against the cost to the parties that
would result from an appointment by taking into consideration the
cost of available alternatives for resolving issues without making an
appointment;

 

 (2) may make an appointment only if the court finds that the appointment is
necessary to ensure the determination of the best interests of the child, unless
the appointment is otherwise required by this code; and

 

 (3) may not require a person appointed under this section to serve without
reasonable compensation for the services rendered by the person.

Tex. Fam. Code Ann. § 107.021 (Vernon 2008). (6) It is important to note that Section
107.021(b)(1)(A) of the Texas Family Code specifically directs the trial court to consider the ability
of the parties to pay reasonable fees to the appointee when deciding whether to make a discretionary
appointment. See Tex. Fam. Code Ann. § 107.021(b)(1)(A). This becomes rather important here
because Section 107.021 also prohibits the trial court from requiring that a person appointed under
that section serve without reasonable compensation. (7) Tex. Fam. Code Ann. § 107.021(b)(3). The
Texas Family Code further addresses the payment of those appointed pursuant to Section 107.021:

 (a) In a suit other than a suit filed by a governmental entity requesting termination of
the parent-child relationship or appointment of the entity as conservator of the child,
in addition to the attorney's fees that may be awarded under Chapter 106, the
following persons are entitled to reasonable fees and expenses in an amount set by
the court and ordered to be paid by one or more parties to the suit:


 (1) an attorney appointed as an amicus attorney or as an attorney ad litem for
the child; and


 (2) a professional who holds a relevant professional license and who is
appointed as guardian ad litem for the child, other than a volunteer advocate.


 (b) The court shall:


 (1) determine  the  fees  and  expenses  of  an  amicus  attorney,  an  attorney
ad litem, or a guardian ad litem by reference to the reasonable and customary
fees for similar services in the county of jurisdiction;


 (2) order a reasonable cost deposit to be made at the time the court makes the
appointment; and


 (3) before the final hearing, order an additional amount to be paid to the
credit of a trust account for the use and benefit of the amicus attorney,
attorney ad litem, or guardian ad litem.


 (c) A  court  may  not  award  costs,  fees,  or  expenses  to  an  amicus  attorney,
attorney ad litem, or guardian ad litem against the state, a state agency, or a political
subdivision of the state under this part.


 (d) The court may determine that fees awarded under this subchapter to an amicus
attorney, an attorney ad litem for the child, or a guardian ad litem for the child are
necessaries for the benefit of the child.

Tex. Fam. Code Ann. § 107.023.

 Section 107.021 of the Texas Family Code provides us the necessary considerations the trial
court must undertake in its decision whether to make discretionary appointments. In determining
whether to appoint a representative, the trial court must give due consideration to the parties' ability
to pay reasonable fees to the appointee. Tex. Fam. Code Ann. § 107.021(b)(1)(A). The trial court
must also balance the child's interests against the cost to the parties by taking into consideration the
cost of available alternatives   for   resolving   issues   without   making   an   appointment.   Tex.
  Fam.   Code   Ann.  § 107.021(b)(1)(B). The court may make such an appointment only if doing
so is necessary to ensure the determination of the child's best interest. Tex. Fam. Code Ann. §
107.021(b)(2). The trial court may not require the appointed person to serve without reasonable
compensation for services rendered. Tex. Fam. Code Ann. § 107.021(b)(3).

(3) Authority to Order a Social Study

 What the trial court and the parties have called a home study is characterized by the Texas
Family Code as a "social study." A social study is "an evaluative process through which information
and recommendations regarding adoption of a child, conservatorship of a child, or possession of or
access to a child may be made to a court, the parties, and the parties' attorneys." Tex. Fam. Code
Ann. § 107.0501(1); see Chacon v. Chacon, 978 S.W.2d 633, 637 (Tex. App.--El Paso 1998, no
pet.). The trial court may order the preparation of a social study into the circumstances and condition
of (1) a child who is the subject of a suit or a party to a suit; and (2) the home of any person
requesting   conservatorship   of,   possession   of,   or   access   to   a   child.   Tex.   Fam.   Code
 Ann.  § 107.051(a); Taylor v. Tex. Dep't of Protective & Regulatory Servs., 160 S.W.3d 641, 649
(Tex. App.--Austin 2005, pet. denied). The remainder of Section 107.051 of the Texas Family Code
goes on to delineate who may be appointed in suits by various entities and briefly refers to the
qualifications   of   those   who   may   conduct   a   social   study.   See   Tex.   Fam.   Code   Ann.
 §§ 107.051(b)-(d) (Vernon 2008). Those provisions are not central to the issues presented in this
petition.

 The   decision   to   order   a   social   study   is   discretionary.   Tex.   Fam.   Code   Ann.
 § 107.051; In re Garza, 981 S.W.2d 438, 442 (Tex. App.--San Antonio 1998, orig. proceeding);
Swearingen v. Swearingen, 578 S.W.2d 829, 831 (Tex. Civ. App.--Houston [1st Dist.] 1979, writ
dism'd). The Texas Family Code specifically addresses the preparation fee for a social study:

 If the court orders a social study to be conducted, the court shall award the agency or
other person a reasonable fee for the preparation of the study that shall be imposed
in the form of a money judgment and paid directly to the agency or other person. The
person or agency may enforce the judgment for the fee by any means available under
law for civil judgments.


Tex. Fam. Code Ann. § 107.056 (Vernon 2008). The Texas Family Code does not specifically
address the situation at hand here, where the trial court has ordered an indigent parent to pay for the
social study. Nor does the Texas Family Code provide us with as tidy a framework of the necessary
factors a trial court must consider in deciding whether to order a social study. Since the ordering of
a social study is a discretionary act, we will address the trial court's order compelling the home study
in a framework analogous to the framework provided when the trial court makes its discretionary
appointments under Section 107.021 of the Texas Family Code.

(4) Basis for Trial Court's Decision to Appoint Ad Litem and Direct Home Study

 Noting that, often, pro se litigants successfully litigate simple divorces, the trial court
distinguished those cases involving children:

 When children are involved, the matter becomes much more complicated. As
demonstrated above, there are many statutory and legal considerations a trial court
must make in deciding conservatorship, possession and access of minor children. In
order to make these decisions, the parties must present competent evidence to the
court upon which the decision may be based. Where the parties (or at least one party)
have attorneys, the court can be assured that the necessary evidence will be presented. 
However, in the absence of attorneys, the court has no such assurance.


The trial court also expressed its concern that "some parties deliberately conceal facts which bear
directly on these issues," that is, of the best interest of the children. The trial court found "that it is
in the minor children's best interests for the court to have access to all of the pertinent facts." The
court thus directed the completion of the social study as a means of achieving such. (8)
 

(5) The Trial Court's Mandatory Considerations in Appointing an Attorney Ad Litem and the
Exercise of Its Discretion in Ordering Home Study

 

 (a) On the Issue of Necessity

 Villanueva contends that the trial court lacked the authority to make these orders in the
absence of any evidence of necessity. The trial court maintains that Villanueva's pro se status makes
it necessary; only by making such appointments can the trial court guarantee that it will be presented
with sufficient information on which to make the required findings relating to the best interest of the
children. 

 As described, the determinations to be made by the trial court presiding over a divorce and
SAPCR center on the best interest of the child even when, as here, the parents appear to have arrived
at an agreed parenting plan. See Tex. Fam. Code Ann. §§ 153.002, 153.007. The trial court's
reasoning for appointing the ad litem and ordering the social study reflects its recognition of this
"primary consideration." See Tex. Fam. Code Ann. § 153.002. And that reasoning appears to be
an attempt to ensure that the trial court will be provided sufficient evidence on which it may make
its mandatory findings regarding the best interest of the Villanueva children.

 The trial court acts under clear instructions to consider first the best interest of the child. So,
to the extent a social study would assist the trial court in so doing, the social study could be
necessary. But it is important to note that, while the trial court must make the determination of the
best interest of the child, there is no evidence that, without the social study, the trial court will be
unable to make such determination. So, the social study could be necessary and would likely be
helpful but, ultimately, we cannot know whether the social study is necessary to allow the trial court
to make its determination as to the best interest of the children. Nor, as the trial court so expresses,
can it know what will be presented or missing to make that determination. 

 (b) On Due Consideration of Ability to Pay and Effect of Affidavit of Inability to Pay 
 Costs


 We note that Villanueva filed an affidavit of inability to pay costs pursuant to Rule 145 of
the Texas Rules of Civil Procedure. See Tex. R. Civ. P. 145. No one contested that affidavit,
meaning its effect as to Villanueva's ability to pay costs is conclusive; she is indigent as a matter of
law. See Equitable Gen. Ins. Co. of Tex. v. Yates, 684 S.W.2d 669, 671 (Tex. 1984). In Yates, the
Texas Supreme Court examined a trial court's conditional grant of a new trial based on a party's
payment of $500.00 for the opposing party's attorney's fees. Id. at 670. The Yates court
acknowledged that ordinarily such a conditional grant would lie within the trial court's discretion. 
Id. at 671. However, the new trial conditioned on a party's payment of attorney's fees was improper
when that party had filed an uncontested affidavit of inability to pay costs pursuant to Rule 145 of
the Texas Rules of Civil Procedure. Id. The Texas Supreme Court also addressed, and ultimately
ignored, the distinction between "costs" and "fees" as it relates to Rule 145 of the Texas Rules of
Civil Procedure. Tex. R. Civ. P. 145. "Although we recognize the general rule that attorney's fees
are not costs, (9) the assessed fees in the present case will be considered in light of Rule 145 and the
rule's intended purpose to guarantee a forum to those unable to pay court costs." Id. So, we learn
from the Texas Supreme Court that the proper focus is not directed at the distinct characterization
of the "fees" or "costs" to be paid. Rather, the focus is on Rule 145's intended effect of guaranteeing
a forum for indigent litigants. See id.

 We also see the effect of an uncontested Rule 145 affidavit in a family law setting in Cook
v. Jones, 521 S.W.2d 335 (Tex. Civ. App.--Dallas 1975, writ ref'd n.r.e.). Cook filed a petition for
divorce in 1973. Id. at 336. Along with her petition, she filed an affidavit of inability to pay court
costs pursuant to Rule 145 of the Texas Rules of Civil Procedure. Id. The trial court certified her
as indigent. Id. Cook attempted to secure personal service of process on her husband but was
unsuccessful. Id. She then took steps to secure substituted service but was again unsuccessful. Id. 
She then applied for substituted service by publication, but her efforts to secure citation by
publication were frustrated by her lack of funds to pay for the cost of publication in a newspaper. 
Id. at 337.

 Cook first sought mandamus relief at the trial court level, asking the trial court to direct the
county sheriff (10) to effect service of citation by publication and make the appropriate return of citation
pursuant to the Texas Rules of Civil Procedure. Her petition was denied, and she appealed to the
intermediate appellate court. Id. The court was critical of the "obviously inadequate" mechanism
of service by publication. It nevertheless recognized the mechanism's availability under the rules and
the denial of which effectively denied Cook meaningful access to the court as a result of her inability
to pay for the cost of publication. Id. at 337-38.

 Because she has been duly certified by the [trial court] as an indigent, plaintiff wife
should be allowed to initiate her divorce action without payment of court costs. Such
costs include the fee for service of citation by publication.


Id. at 338. The court noted that the sheriff's office is "unequivocally directed to perform this duty"
and ordinarily would be entitled to payment for the cost of publication just as it would be entitled
to charge a fee for serving other citations. Id. Rule 145, however, relieved Cook of her obligation
to pay the sheriff's office for its services and permitted her to require performance of the sheriff's
duties without payment. Id. The Dallas court focused on Rule 145's effect of allowing access to a
forum for indigent litigants, the same concern which would be later shared, and arguably broadened,
by the Texas Supreme Court in Yates. See 684 S.W.2d at 671.


 (c) On Balancing Best Interest of Child and Cost of Appointment to Parent

 As is evident from the trial court's order on Villanueva's objections, we feel quite certain that
the trial court's orders were motivated by the pursuit of its duty to determine the best interest of the
Villanueva children. However, the prohibitive effect of the appointments in this situation causes us
to question the balance between finding the best interest of the children and effectively denying the
parents a forum in which they may dissolve the marriage and arrange for the custody of the children.

 The case of Shirley v. Montgomery, 768 S.W.2d 430 (Tex. App.--Houston [14th Dist.] 1989,
orig. proceeding), is instructive in examining this delicate balance. The mandamus proceeding in
Shirley came from a "complex and hotly contested custody battle." Id. at 430. The trial court
ordered the mother to pay $15,000.00 in attorney ad litem fees. Id. at 431. The mother, who had
gotten $186,000.00 from her parents to pay attorney's fees related to the divorce and criminal
proceedings stemming from the divorce, had exhausted any funds available to her and failed to pay
the $15,000.00 as ordered. Id. The attorney ad litem then filed a motion for contempt and sanctions
at the hearing on which the mother and her parents both testified that they had no more funds
available to them to pay the attorney ad litem fees. Id. When the mother again failed to pay as
ordered, the trial court imposed discovery sanctions: her pleadings were struck and she was
prohibited from introducing evidence at trial. Id.

 The mother sought mandamus relief from the court of appeals, contending that the trial
court's order to pay the ad litem fees was not enforceable by discovery sanctions and that the trial
court abused its discretion by ordering her to pay the $15,000.00 when she was financially unable
to comply with the order. The court concluded that the trial court's order was enforceable through
discovery sanctions. Id. at 432-33. The court went on to conclude, though, that in this situation,
when the mother testified that she was unable to pay the attorney ad litem fees, imposition of such
sanctions was, in fact, an abuse of discretion. Id. at 433. The Shirley court pointed to the mother's
testimony that she was no longer able to pay her own attorney, that she was working at a job that
paid five dollars an hour, that she owned no assets of any value, and that she had about $200.00 in
savings. Id. She did offer to make monthly payments to the attorney ad litem. Id. The mother's
parents also testified that they could no longer finance their daughter's custody battle. Id.

 Based on the testimony at the contempt hearing, the court concluded that the trial court could
have come to only one conclusion: that the mother was not able to pay $15,000.00 to the attorney
ad litem. Id. In concluding that appeal was an inadequate remedy under these circumstances, the
court touched on "the primary consideration," the best interest of the child at the center of the
custody dispute:

 In this child custody case, the overriding consideration is the best interest of the four-year-old child. . . . We believe it will be in her best interest for her mother to have a
forum in which to present her claim of conservatorship in the upcoming trial, without
having to await an appeal and possibly a second trial.


Id. at 434. The court granted the mother relief, directing the trial court to set aside its order striking
her pleadings and disallowing her offering of evidence. Id. It is important to note that the court
related the child's best interest to the availability of and the parent's access to a forum. See id.



(6) Availability of Mandamus

 Mandamus will issue only when the mandamus record establishes (1) a clear abuse of
discretion or the violation of a duty imposed by law and (2) the absence of a clear and adequate
remedy at law. Cantu v. Longoria, 878 S.W.2d 131, 132 (Tex. 1994) (orig. proceeding); In re Green
Tree Servicing LLC, 275 S.W.3d 592, 600 (Tex. App.--Texarkana 2008, orig. proceeding).

 A trial court clearly abuses its discretion if "it reaches a decision so arbitrary and
unreasonable as to amount to a clear and prejudicial error of law." Walker v. Packer, 827 S.W.2d
833, 839 (Tex. 1992); In re Green Tree, 275 S.W.3d at 600. With respect to the resolution of factual
issues or matters committed to the trial court's discretion, the reviewing court may not substitute its
judgment for the trial court. Brady v. Fourteenth Court of Appeals, 795 S.W.2d 712, 714 (Tex.
1990); In re Green Tree, 275 S.W.3d at 600. However, "[a] trial court has no 'discretion' in
determining what the law is or applying the law to the facts." Huie v. DeShazo, 922 S.W.2d 920,
927-28 (Tex. 1996); see In re Jorden, 249 S.W.3d 416, 424 (Tex. 2008) (explaining that "[a] trial
or appellate court has no discretion in determining what the law is or in applying the law to the facts,
even if the law is somewhat unsettled"). Therefore, an erroneous legal conclusion by the trial court
constitutes an abuse of discretion. Huie, 922 S.W.2d at 927-28. A clear failure by the trial court to
apply the law correctly is an abuse of discretion. Walker, 827 S.W.2d at 840; In re Green Tree, 275
S.W.3d at 600. A reviewing court may set aside the trial court's determination if it is clear from the
record that the trial court could only reach one decision. See Walker, 827 S.W.2d at 840.


(7) Conclusions

 According to her affidavit of inability to pay, Villanueva has four dependents and a monthly
income of $102.02. She owns a 1994 Geo Prism and has approximately $20.00 total in checking and
savings accounts and $15.00 in cash. She has a minimum of $515.00 in monthly expenses. 

 The law is clear that, since no one contested her affidavit of inability to pay costs, Villanueva
is indigent as a matter of law. As applied in Yates and Cook, then, without reference to the exact
nature of the cost or fee at issue, Rule 145 of the Texas Rules of Civil Procedure removes any
financial obstacles to the indigent litigant's access to the courts. See Yates, 684 S.W.2d at 671; Cook,
521 S.W.2d at 337-38. Access to a forum in which to resolve family law matters is in the best
interest of the children. See Shirley, 768 S.W.2d at 433-34 .

 Based on the uncontested assertions in Villanueva's affidavit, the conclusive effect and
application of Rule 145 of the Texas Rules of Civil Procedure, and the protective stances taken in
Yates, Cook, and Shirley to guarantee an indigent litigant's access to the court system, the trial court
could only come to one conclusion: that Villanueva could not pay for the attorney ad litem and the
social study. We conclude that the trial court abused its discretion when it ordered Villanueva to pay
the costs and fees associated with the attorney ad litem and the social study administrator when
Villanueva is indigent as a matter of law and when such orders effectively deny her a forum in which
to dissolve her marriage and resolve custody issues. Though undoubtedly driven by its duty to
determine the best interest of the children, the trial court exercised its discretion in a manner
inconsistent with the conclusive effect as to indigence provided by Rule 145 of the Texas Rules of
Civil Procedure. Tex. R. Civ. P. 145.

 Since there appears to be no authority that would authorize an interlocutory appeal here and
since it does not appear litigation will continue such that there will be a final order, there is no
adequate remedy by appeal.

 With that, we conditionally grant mandamus relief. The writ of mandamus will issue only
if the trial court fails to vacate its order appointing the attorney ad litem and ordering a social study.


 

 Josh R. Morriss, III

 Chief Justice


Date Submitted: July 16, 2009

Date Decided: July 17, 2009
1. We find nothing in the record to question or contest Villanueva's indigency.
2. We will use the term "social study" as described by Section 107.0501(1) of the Texas Family
Code. See Tex. Fam. Code Ann. § 107.0501(1) (Vernon 2008).
3. We emphasize that the order does not abate the appointment of the attorney ad litem, but
instead abates Villanueva's objection to that appointment, thus deferring a ruling on the merits of that
objection. 
4. To  the  extent  that  Section  107.023  of  the  Texas  Family  Code  mandates  that  the
attorney ad litem be paid for his work done in preparation of the answer on behalf of the children, 
we  will  address  the  trial  court's  order  appointing  the  attorney  ad  litem.  Tex.  Fam.  Code
Ann. § 107.023 (Vernon 2008). We will develop this issue later in the opinion.
5. A SAPCR is "a suit filed as provided by this title in which the appointment of a managing
conservator or a possessory conservator, access to or support of a child, or establishment or
termination of the parent-child relationship is requested." Tex. Fam. Code Ann. § 101.032(a)
(Vernon 2008); Brown v. Brown, 917 S.W.2d 358, 361 (Tex. App.--El Paso 1996, no writ).
6. We have omitted reference to the language in Section (a-1) because it is irrelevant to our
situation. Section (a-1) requires the trial court to appoint an amicus attorney or an attorney ad litem
in a suit seeking termination of parental rights brought by an individual "unless the court finds that
the interests of the child will be represented adequately by a party to the suit whose interests are not
in conflict with the child's interests." Tex. Fam. Code Ann. § 107.021(a-1) (Vernon 2008).
7. Again, it is because the Texas Family Code prohibits the trial court from requiring an
appointed attorney ad litem to work without reasonable compensation and because the attorney ad
litem has already participated to some extent in the cause below, that we feel the attorney ad litem
issue is before us.
8. In recognition of Section 107.021 of the Texas Family Code's direction that it "
tak[e] into
consideration the cost of available alternatives for resolving issues without making an appointment,"
the trial court wrote:


 Therefore, in considering "available alternatives" under section 107.021, the
Court will abate its order appointing an ad litem and give Petitioner the opportunity
to present the necessary evidence at a final hearing. If, at the final hearing, Petitioner
is able to present sufficient evidence to demonstrate that her agreed order is in the
children's best interest, no ad litem will be necessary. If, on the other hand, Petitioner
is not able to present sufficient evidence to demonstrate this fact, the Court will
continue the hearing, deny Petitioner's objection and wait for the ad litem to finish
his work. 

 Nevertheless, a home study is routine in any case involving child
conservatorship, possession and access, whether the parties are represented by
counsel or not. Family Code section 107.051 provides for the appointment of a
social study into the circumstances and condition of: "(1) a child who is the subject
of a suit or a party to a suit; and (2) the home of any person requesting
conservatorship of, possession of, or access to child." By its terms, section 107.021
does not apply to social study appointments, and section 107.051 contains no
requirement that the court give consideration to the parties' ability to pay fees or to
other alternatives. Therefore, the Court overrules Petitioner's objection to the order
compelling home study.

9. The Texas Family Code allows the trial court to assess attorney's fees as costs. See Tex.
Fam. Code Ann. § 106.002 (Vernon 2008). 
10. To be thorough, Cook's petition went on to ask the trial court to direct the district clerk to
pay the publication charges to the newspaper and to direct the county commissioners to make
available the necessary funds for that payment.