

# In The
# Court of Appeals
## Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00045-CV
_____

IN RE:
CARLA KAYE VILLANUEVA

Original Mandamus Proceeding

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

O P I N I O N

Carla Kaye Villanueva, proceeding pro se below, brought a divorce action and suit affecting the parent-child relationship (SAPCR). She also filed an affidavit of inability to pay costs.[1] Her husband filed a waiver of service, in which he waived his right to make an appearance in the case and his right to further notice in the proceedings. So, the matter below is an uncontested divorce and custody case.

Before the husband's waiver, on February 23, 2009, the trial court sua sponte entered its order appointing ad litem and compelling home study.[2] The order does not recite that there was any hearing or any evidence taken to support the order, and we find in the record no evidence that any hearing was held or any evidence was taken. In that order, the trial court found that "it is in the best interest of the child[ren] that an attorney ad litem be appointed"; that order names James H. Verschoyle as attorney ad litem and provides that the parties pay Verschoyle in advance a fee of $750.00. The order also directed Charlene Raney perform a social study of the home within forty-five days of the order and directed the parties to pay Raney an unspecified reasonable fee in advance in equal shares.

The attorney ad litem filed an answer on behalf of the children March 4, 2009. Villanueva objected to the trial court's order March 18, 2009. In response, again with no recitation or indication

---

[1]We find nothing in the record to question or contest Villanueva's indigency.

[2]We will use the term "social study" as described by Section 107.0501(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 107.0501(1) (Vernon 2008).

that any hearing was held or evidence received relative to Villanueva's objections, the trial court overruled her objection to the social study and abated[3] her objection to the appointment of the attorney ad litem. In abating her objection to the appointment of the attorney ad litem, the trial court stated, "If [Villanueva] is able to present the necessary information, the objection will be sustained. If not, the Court will continue the hearing and overrule the objection." The effect of the trial court's ruling is that the social study order is still in effect and that the attorney ad litem is still appointed, the latter to be made the subject of a deferred ruling, which would come after a later hearing or a later presentation of information by Villanueva.[4]

Villanueva argues that the trial court cannot make this order without evidence that such appointments are necessary. Her argument is that, since the divorce and custody issues are uncontested and Villanueva's parental rights are not being challenged, the trial court was without authority to make these appointments, especially considering that she is unable to pay for them. She asks this Court to issue a writ of mandamus directing the trial court to vacate its order appointing the attorney ad litem and providing for a home study. We address the issues presented by describing the trial court's duties under the Texas Family Code, outlining the trial court's authority to appoint an

---

[3]We emphasize that the order does not abate the appointment of the attorney ad litem, but instead abates Villanueva's objection to that appointment, thus deferring a ruling on the merits of that objection.

[4]To the extent that Section 107.023 of the Texas Family Code mandates that the attorney ad litem be paid for his work done in preparation of the answer on behalf of the children, we will address the trial court's order appointing the attorney ad litem. TEX. FAM. CODE ANN. § 107.023 (Vernon 2008). We will develop this issue later in the opinion.

attorney ad litem, and outlining its authority to order a social study, exploring the considerations the trial court must undertake as to each determination. We then examine the trial court's reasoning here for appointing the attorney ad litem and ordering a home study in terms of those considerations and in terms of the effect of Villanueva's indigent status. Finally, we put the analysis in the framework to determine whether mandamus will lie. After doing so, we will conditionally grant mandamus relief.

*(1)    Duty of the Trial Court in Divorce and SAPCR*

A petition in a suit to dissolve a marriage involving children under the age of eighteen must include a SAPCR.[5] *See* TEX. FAM. CODE ANN. § 6.406(b) (Vernon 2006); *Brown*, 917 S.W.2d at 361–62 (in divorce proceeding in which minor children are involved, trial court must dispose of all issues before it, including questions of conservatorship, possession, and access to minor children and child support). The Texas Family Code allows for parties to waive the issuance or service of process as did Villanueva's husband here. TEX. FAM. CODE ANN. § 6.4035 (Vernon 2006).

Generally, a final order in a SAPCR must include a parenting plan. *See* TEX. FAM. CODE ANN. § 153.603 (Vernon 2008). The Texas Family Code permits the parties to submit an agreed parenting plan, but that agreed plan must still be approved by the trial court. *See* TEX. FAM. CODE ANN. § 153.007 (Vernon 2008). In determining whether to approve the proposed parenting plan, the

---

[5]A SAPCR is "a suit filed as provided by this title in which the appointment of a managing conservator or a possessory conservator, access to or support of a child, or establishment or termination of the parent-child relationship is requested." TEX. FAM. CODE ANN. § 101.032(a) (Vernon 2008); *Brown v. Brown*, 917 S.W.2d 358, 361 (Tex. App.—El Paso 1996, no writ).

4

trial court is called on to determine whether the plan is in the best interest of the child or children. TEX. FAM. CODE ANN. § 153.007(b). This mandate is consistent with the Texas Family Code's general pronouncement that the child's best interest is to be "the primary consideration" in determining issues of conservatorship and possession of and access to the child. TEX. FAM. CODE ANN. § 153.002 (Vernon 2008).

*(2)	Authority to Appoint Attorney Ad Litem*

Again, our inquiry here is a limited one that addresses only the payment of the appointed attorney ad litem for the work performed before the trial court's decision to hold the appointment order in abeyance. The trial court is given discretionary authority to appoint an attorney ad litem in certain cases and must take certain factors into consideration in deciding whether to make such appointments:

> (a) In a suit in which the best interests of a child are at issue, other than a suit filed by a governmental entity requesting termination of the parent-child relationship or appointment of the entity as conservator of the child, the court may appoint one of the following:
>
> > (1) an amicus attorney;
> >
> > (2) an attorney ad litem; or
> >
> > (3) a guardian ad litem.
> >
> > . . . .

(b) In determining whether to make an appointment under this section, the court:

(1) shall:

(A) give due consideration to the ability of the parties to pay reasonable fees to the appointee; and

(B) balance the child's interests against the cost to the parties that would result from an appointment by taking into consideration the cost of available alternatives for resolving issues without making an appointment;

(2) may make an appointment only if the court finds that the appointment is necessary to ensure the determination of the best interests of the child, unless the appointment is otherwise required by this code; and

(3) may not require a person appointed under this section to serve without reasonable compensation for the services rendered by the person.

TEX. FAM. CODE ANN. § 107.021 (Vernon 2008).[6]  It is important to note that Section 107.021(b)(1)(A) of the Texas Family Code specifically directs the trial court to consider the ability of the parties to pay reasonable fees to the appointee when deciding whether to make a discretionary appointment.  *See* TEX. FAM. CODE ANN. § 107.021(b)(1)(A).  This becomes rather important here because Section 107.021 also prohibits the trial court from requiring that a person appointed under

---

[6]We have omitted reference to the language in Section (a-1) because it is irrelevant to our situation.  Section (a-1) requires the trial court to appoint an amicus attorney or an attorney ad litem in a suit seeking termination of parental rights brought by an individual "unless the court finds that the interests of the child will be represented adequately by a party to the suit whose interests are not in conflict with the child's interests."  TEX. FAM. CODE ANN. § 107.021(a-1) (Vernon 2008).

that section serve without reasonable compensation.[7] Tex. Fam. Code Ann. § 107.021(b)(3). The

Texas Family Code further addresses the payment of those appointed pursuant to Section 107.021:

> (a) In a suit other than a suit filed by a governmental entity requesting termination of the parent-child relationship or appointment of the entity as conservator of the child, in addition to the attorney's fees that may be awarded under Chapter 106, the following persons are entitled to reasonable fees and expenses in an amount set by the court and ordered to be paid by one or more parties to the suit:
>
>> (1) an attorney appointed as an amicus attorney or as an attorney ad litem for the child; and
>>
>> (2) a professional who holds a relevant professional license and who is appointed as guardian ad litem for the child, other than a volunteer advocate.
>
> (b) The court shall:
>
>> (1) determine the fees and expenses of an amicus attorney, an attorney ad litem, or a guardian ad litem by reference to the reasonable and customary fees for similar services in the county of jurisdiction;
>>
>> (2) order a reasonable cost deposit to be made at the time the court makes the appointment; and
>>
>> (3) before the final hearing, order an additional amount to be paid to the credit of a trust account for the use and benefit of the amicus attorney, attorney ad litem, or guardian ad litem.
>
> (c) A court may not award costs, fees, or expenses to an amicus attorney, attorney ad litem, or guardian ad litem against the state, a state agency, or a political subdivision of the state under this part.

---

[7]Again, it is because the Texas Family Code prohibits the trial court from requiring an appointed attorney ad litem to work without reasonable compensation and because the attorney ad litem has already participated to some extent in the cause below, that we feel the attorney ad litem issue is before us.

(d) The court may determine that fees awarded under this subchapter to an amicus attorney, an attorney ad litem for the child, or a guardian ad litem for the child are necessaries for the benefit of the child.

TEX. FAM. CODE ANN. § 107.023.

Section 107.021 of the Texas Family Code provides us the necessary considerations the trial court must undertake in its decision whether to make discretionary appointments. In determining whether to appoint a representative, the trial court must give due consideration to the parties' ability to pay reasonable fees to the appointee. TEX. FAM. CODE ANN. § 107.021(b)(1)(A). The trial court must also balance the child's interests against the cost to the parties by taking into consideration the cost of available alternatives for resolving issues without making an appointment. TEX. FAM. CODE ANN. § 107.021(b)(1)(B). The court may make such an appointment only if doing so is necessary to ensure the determination of the child's best interest. TEX. FAM. CODE ANN. § 107.021(b)(2). The trial court may not require the appointed person to serve without reasonable compensation for services rendered. TEX. FAM. CODE ANN. § 107.021(b)(3).

*(3)     Authority to Order a Social Study*

What the trial court and the parties have called a home study is characterized by the Texas Family Code as a "social study." A social study is "an evaluative process through which information and recommendations regarding adoption of a child, conservatorship of a child, or possession of or access to a child may be made to a court, the parties, and the parties' attorneys." TEX. FAM. CODE ANN. § 107.0501(1); *see Chacon v. Chacon*, 978 S.W.2d 633, 637 (Tex. App.—El Paso 1998, no pet.). The trial court may order the preparation of a social study into the circumstances and condition

of (1) a child who is the subject of a suit or a party to a suit; and (2) the home of any person requesting conservatorship of, possession of, or access to a child. TEX. FAM. CODE ANN. § 107.051(a); *Taylor v. Tex. Dep't of Protective & Regulatory Servs*., 160 S.W.3d 641, 649 (Tex. App.—Austin 2005, pet. denied). The remainder of Section 107.051 of the Texas Family Code goes on to delineate who may be appointed in suits by various entities and briefly refers to the qualifications of those who may conduct a social study. *See* TEX. FAM. CODE Ann. §§ 107.051(b)–(d) (Vernon 2008). Those provisions are not central to the issues presented in this petition.

The decision to order a social study is discretionary. TEX. FAM. CODE ANN. § 107.051; *In re Garza*, 981 S.W.2d 438, 442 (Tex. App.—San Antonio 1998, orig. proceeding); *Swearingen v. Swearingen*, 578 S.W.2d 829, 831 (Tex. Civ. App.—Houston [1st Dist.] 1979, writ dism'd). The Texas Family Code specifically addresses the preparation fee for a social study:

> If the court orders a social study to be conducted, the court shall award the agency or other person a reasonable fee for the preparation of the study that shall be imposed in the form of a money judgment and paid directly to the agency or other person. The person or agency may enforce the judgment for the fee by any means available under law for civil judgments.

TEX. FAM. CODE ANN. § 107.056 (Vernon 2008). The Texas Family Code does not specifically address the situation at hand here, where the trial court has ordered an indigent parent to pay for the social study. Nor does the Texas Family Code provide us with as tidy a framework of the necessary factors a trial court must consider in deciding whether to order a social study. Since the ordering of a social study is a *discretionary* act, we will address the trial court's order compelling the home study

in a framework analogous to the framework provided when the trial court makes its *discretionary* appointments under Section 107.021 of the Texas Family Code.

*(4)      Basis for Trial Court's Decision to Appoint Ad Litem and Direct Home Study*

Noting that, often, pro se litigants successfully litigate simple divorces, the trial court distinguished those cases involving children:

> When children are involved, the matter becomes much more complicated. As demonstrated above, there are many statutory and legal considerations a trial court must make in deciding conservatorship, possession and access of minor children. In order to make these decisions, the parties must present competent evidence to the court upon which the decision may be based. Where the parties (or at least one party) have attorneys, the court can be assured that the necessary evidence will be presented. However, in the absence of attorneys, the court has no such assurance.

The trial court also expressed its concern that "some parties deliberately conceal facts which bear directly on these issues," that is, of the best interest of the children. The trial court found "that it is in the minor children's best interests for the court to have access to all of the pertinent facts." The court thus directed the completion of the social study as a means of achieving such.[8]

---

[8]In recognition of Section 107.021 of the Texas Family Code's direction that it "tak[e] into consideration the cost of available alternatives for resolving issues without making an appointment," the trial court wrote:

> Therefore, in considering "available alternatives" under section 107.021, the Court will abate its order appointing an ad litem and give Petitioner the opportunity to present the necessary evidence at a final hearing. If, at the final hearing, Petitioner is able to present sufficient evidence to demonstrate that her agreed order is in the children's best interest, no ad litem will be necessary. If, on the other hand, Petitioner is not able to present sufficient evidence to demonstrate this fact, the Court will continue the hearing, deny Petitioner's objection and wait for the ad litem to finish his work.

*(5)     The Trial Court's Mandatory Considerations in Appointing an Attorney Ad Litem and the Exercise of Its Discretion in Ordering Home Study*

*(a)     On the Issue of Necessity*

Villanueva contends that the trial court lacked the authority to make these orders in the absence of any evidence of necessity. The trial court maintains that Villanueva's pro se status makes it necessary; only by making such appointments can the trial court guarantee that it will be presented with sufficient information on which to make the required findings relating to the best interest of the children.

As described, the determinations to be made by the trial court presiding over a divorce and SAPCR center on the best interest of the child even when, as here, the parents appear to have arrived at an agreed parenting plan. *See* TEX. FAM. CODE ANN. §§ 153.002, 153.007. The trial court's reasoning for appointing the ad litem and ordering the social study reflects its recognition of this "primary consideration." *See* TEX. FAM. CODE ANN. § 153.002. And that reasoning appears to be

---

Nevertheless, a home study is routine in any case involving child conservatorship, possession and access, whether the parties are represented by counsel or not. Family Code section 107.051 provides for the appointment of a social study into the circumstances and condition of: "(1) a child who is the subject of a suit or a party to a suit; and (2) the home of any person requesting conservatorship of, possession of, or access to child." By its terms, section 107.021 does not apply to social study appointments, and section 107.051 contains no requirement that the court give consideration to the parties' ability to pay fees or to other alternatives. Therefore, the Court overrules Petitioner's objection to the order compelling home study.

an attempt to ensure that the trial court will be provided sufficient evidence on which it may make its mandatory findings regarding the best interest of the Villanueva children.

The trial court acts under clear instructions to consider first the best interest of the child. So, to the extent a social study would assist the trial court in so doing, the social study *could* be necessary. But it is important to note that, while the trial court must make the determination of the best interest of the child, there is no evidence that, without the social study, the trial court will be unable to make such determination. So, the social study *could* be necessary and *would* likely be helpful but, ultimately, we cannot know whether the social study is necessary to allow the trial court to make its determination as to the best interest of the children. Nor, as the trial court so expresses, can it know what will be presented or missing to make that determination.

> *(b)*      *On Due Consideration of Ability to Pay and Effect of Affidavit of Inability to Pay Costs*

We note that Villanueva filed an affidavit of inability to pay costs pursuant to Rule 145 of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 145. No one contested that affidavit, meaning its effect as to Villanueva's ability to pay costs is conclusive; she is indigent as a matter of law. *See Equitable Gen. Ins. Co. of Tex. v. Yates*, 684 S.W.2d 669, 671 (Tex. 1984). In *Yates*, the Texas Supreme Court examined a trial court's conditional grant of a new trial based on a party's payment of $500.00 for the opposing party's attorney's fees. *Id.* at 670. The *Yates* court acknowledged that ordinarily such a conditional grant would lie within the trial court's discretion. *Id.* at 671. However, the new trial conditioned on a party's payment of attorney's fees was improper

12

when that party had filed an uncontested affidavit of inability to pay costs pursuant to Rule 145 of the Texas Rules of Civil Procedure. *Id.* The Texas Supreme Court also addressed, and ultimately ignored, the distinction between "costs" and "fees" as it relates to Rule 145 of the Texas Rules of Civil Procedure. TEX. R. CIV. P. 145. "Although we recognize the general rule that attorney's fees are not costs,[9] the assessed fees in the present case will be considered in light of Rule 145 and the rule's intended purpose to guarantee a forum to those unable to pay court costs." *Id.* So, we learn from the Texas Supreme Court that the proper focus is not directed at the distinct characterization of the "fees" or "costs" to be paid. Rather, the focus is on Rule 145's intended effect of guaranteeing a forum for indigent litigants. *See id.*

We also see the effect of an uncontested Rule 145 affidavit in a family law setting in *Cook v. Jones*, 521 S.W.2d 335 (Tex. Civ. App.—Dallas 1975, writ ref'd n.r.e.). Cook filed a petition for divorce in 1973. *Id.* at 336. Along with her petition, she filed an affidavit of inability to pay court costs pursuant to Rule 145 of the Texas Rules of Civil Procedure. *Id.* The trial court certified her as indigent. *Id.* Cook attempted to secure personal service of process on her husband but was unsuccessful. *Id.* She then took steps to secure substituted service but was again unsuccessful. *Id.* She then applied for substituted service by publication, but her efforts to secure citation by publication were frustrated by her lack of funds to pay for the cost of publication in a newspaper. *Id.* at 337.

---

[9]The Texas Family Code allows the trial court to assess attorney's fees as costs. *See* TEX. FAM. CODE ANN. § 106.002 (Vernon 2008).

13

Cook first sought mandamus relief at the trial court level, asking the trial court to direct the county sheriff[10] to effect service of citation by publication and make the appropriate return of citation pursuant to the Texas Rules of Civil Procedure. Her petition was denied, and she appealed to the intermediate appellate court. *Id.* The court was critical of the "obviously inadequate" mechanism of service by publication. It nevertheless recognized the mechanism's availability under the rules and the denial of which effectively denied Cook meaningful access to the court as a result of her inability to pay for the cost of publication. *Id.* at 337–38.

> Because she has been duly certified by the [trial court] as an indigent, plaintiff wife should be allowed to initiate her divorce action without payment of court costs. Such costs include the fee for service of citation by publication.

*Id.* at 338. The court noted that the sheriff's office is "unequivocally directed to perform this duty" and ordinarily would be entitled to payment for the cost of publication just as it would be entitled to charge a fee for serving other citations. *Id.* Rule 145, however, relieved Cook of her obligation to pay the sheriff's office for its services and permitted her to require performance of the sheriff's duties without payment. *Id.* The Dallas court focused on Rule 145's effect of allowing access to a forum for indigent litigants, the same concern which would be later shared, and arguably broadened, by the Texas Supreme Court in *Yates*. *See* 684 S.W.2d at 671.

---

[10]To be thorough, Cook's petition went on to ask the trial court to direct the district clerk to pay the publication charges to the newspaper and to direct the county commissioners to make available the necessary funds for that payment.

*(c)       On Balancing Best Interest of Child and Cost of Appointment to Parent*

As is evident from the trial court's order on Villanueva's objections, we feel quite certain that the trial court's orders were motivated by the pursuit of its duty to determine the best interest of the Villanueva children.  However, the prohibitive effect of the appointments in this situation causes us to question the balance between finding the best interest of the children and effectively denying the parents a forum in which they may dissolve the marriage and arrange for the custody of the children.

The case of *Shirley v. Montgomery*, 768 S.W.2d 430 (Tex. App.—Houston [14th Dist.] 1989, orig. proceeding), is instructive in examining this delicate balance.  The mandamus proceeding in *Shirley* came from a "complex and hotly contested custody battle." *Id.* at 430.  The trial court ordered the mother to pay $15,000.00 in attorney ad litem fees. *Id.* at 431.  The mother, who had gotten $186,000.00 from her parents to pay attorney's fees related to the divorce and criminal proceedings stemming from the divorce, had exhausted any funds available to her and failed to pay the $15,000.00 as ordered. *Id.*  The attorney ad litem then filed a motion for contempt and sanctions at the hearing on which the mother and her parents both testified that they had no more funds available to them to pay the attorney ad litem fees. *Id.*  When the mother again failed to pay as ordered, the trial court imposed discovery sanctions: her pleadings were struck and she was prohibited from introducing evidence at trial. *Id.*

The mother sought mandamus relief from the court of appeals, contending that the trial court's order to pay the ad litem fees was not enforceable by discovery sanctions and that the trial court abused its discretion by ordering her to pay the $15,000.00 when she was financially unable

15

to comply with the order. The court concluded that the trial court's order was enforceable through discovery sanctions. *Id.* at 432–33. The court went on to conclude, though, that in this situation, when the mother testified that she was unable to pay the attorney ad litem fees, imposition of such sanctions was, in fact, an abuse of discretion. *Id.* at 433. The *Shirley* court pointed to the mother's testimony that she was no longer able to pay her own attorney, that she was working at a job that paid five dollars an hour, that she owned no assets of any value, and that she had about $200.00 in savings. *Id.* She did offer to make monthly payments to the attorney ad litem. *Id.* The mother's parents also testified that they could no longer finance their daughter's custody battle. *Id.*

Based on the testimony at the contempt hearing, the court concluded that the trial court could have come to only one conclusion: that the mother was not able to pay $15,000.00 to the attorney ad litem. *Id.* In concluding that appeal was an inadequate remedy under these circumstances, the court touched on "the primary consideration," the best interest of the child at the center of the custody dispute:

> In this child custody case, the overriding consideration is the best interest of the four-year-old child. . . . We believe it will be in her best interest for her mother to have a forum in which to present her claim of conservatorship in the upcoming trial, without having to await an appeal and possibly a second trial.

*Id.* at 434. The court granted the mother relief, directing the trial court to set aside its order striking her pleadings and disallowing her offering of evidence. *Id.* It is important to note that the court related the child's best interest to the availability of and the parent's access to a forum. *See id.*

*(6)     Availability of Mandamus*

Mandamus will issue only when the mandamus record establishes (1) a clear abuse of discretion or the violation of a duty imposed by law and (2) the absence of a clear and adequate remedy at law. *Cantu v. Longoria*, 878 S.W.2d 131, 132 (Tex. 1994) (orig. proceeding); *In re Green Tree Servicing LLC*, 275 S.W.3d 592, 600 (Tex. App.—Texarkana 2008, orig. proceeding).

A trial court clearly abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992); *In re Green Tree*, 275 S.W.3d at 600. With respect to the resolution of factual issues or matters committed to the trial court's discretion, the reviewing court may not substitute its judgment for the trial court. *Brady v. Fourteenth Court of Appeals*, 795 S.W.2d 712, 714 (Tex. 1990); *In re Green Tree*, 275 S.W.3d at 600. However, "[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Huie v. DeShazo*, 922 S.W.2d 920, 927–28 (Tex. 1996); *see In re Jorden*, 249 S.W.3d 416, 424 (Tex. 2008) (explaining that "[a] trial or appellate court has no discretion in determining what the law is or in applying the law to the facts, even if the law is somewhat unsettled"). Therefore, an erroneous legal conclusion by the trial court constitutes an abuse of discretion. *Huie*, 922 S.W.2d at 927-28. A clear failure by the trial court to apply the law correctly is an abuse of discretion. *Walker*, 827 S.W.2d at 840; *In re Green Tree*, 275 S.W.3d at 600. A reviewing court may set aside the trial court's determination if it is clear from the record that the trial court could only reach one decision. *See Walker*, 827 S.W.2d at 840.

*(7)*     *Conclusions*

According to her affidavit of inability to pay, Villanueva has four dependents and a monthly income of $102.02. She owns a 1994 Geo Prism and has approximately $20.00 total in checking and savings accounts and $15.00 in cash. She has a minimum of $515.00 in monthly expenses.

The law is clear that, since no one contested her affidavit of inability to pay costs, Villanueva is indigent as a matter of law. As applied in *Yates* and *Cook*, then, without reference to the exact nature of the cost or fee at issue, Rule 145 of the Texas Rules of Civil Procedure removes any financial obstacles to the indigent litigant's access to the courts. *See Yates*, 684 S.W.2d at 671; *Cook*, 521 S.W.2d at 337–38. Access to a forum in which to resolve family law matters is in the best interest of the children. *See Shirley*, 768 S.W.2d at 433–34 .

Based on the uncontested assertions in Villanueva's affidavit, the conclusive effect and application of Rule 145 of the Texas Rules of Civil Procedure, and the protective stances taken in *Yates*, *Cook*, and *Shirley* to guarantee an indigent litigant's access to the court system, the trial court could only come to one conclusion: that Villanueva could not pay for the attorney ad litem and the social study. We conclude that the trial court abused its discretion when it ordered Villanueva to pay the costs and fees associated with the attorney ad litem and the social study administrator when Villanueva is indigent as a matter of law and when such orders effectively deny her a forum in which to dissolve her marriage and resolve custody issues. Though undoubtedly driven by its duty to determine the best interest of the children, the trial court exercised its discretion in a manner

18

inconsistent with the conclusive effect as to indigence provided by Rule 145 of the Texas Rules of Civil Procedure.  TEX. R. CIV. P. 145.

Since there appears to be no authority that would authorize an interlocutory appeal here and since it does not appear litigation will continue such that there will be a final order, there is no adequate remedy by appeal.

With that, we conditionally grant mandamus relief.  The writ of mandamus will issue only if the trial court fails to vacate its order appointing the attorney ad litem and ordering a social study.

Josh R. Morriss, III
Chief Justice

Date Submitted:     July 16, 2009
Date Decided:     July 17, 2009