

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00146-CV

THOMAS A. WILDER, DISTRICT CLERK                    APPELLANT

V.

ODELL CAMPBELL, THOMAS RAY ROBERTSON, SHAWNTA RENEA COLEMAN, SCOTT WIERNIK, TAIRHONDA MCAFEE, MARYBETH LYNN JEWELL, AND DIANA J. NAJERA                    APPELLEES

----------

## FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

----------

## DISSENTING OPINION

----------

I respectfully dissent. The trial court had jurisdiction to grant the temporary injunction against the district clerk to stay his attempts to tax and collect court costs from Appellees and other persons similarly situated. It is undisputed, and the majority acknowledges, that each Appellee filed an affidavit of indigence with

their petitions, that all of their affidavits were uncontested, and that Appellees were thus entitled to proceed in their divorce actions without payment of costs pursuant to rule 145.[1]

Texas Rule of Civil Procedure 145, which prescribes the procedure to be followed for indigent parties to be able to proceed in the trial courts without payment of costs, was adopted "to protect the weak against the strong, and to make sure that no man should be denied a forum in which to adjudicate his rights merely because he is too poor to pay the court costs." *Pinchback v. Hockless*, 139 Tex. 536, 538, 164 S.W.2d 19, 19–20 (1942).

Legal aid and pro bono programs are able to help only an estimated twenty percent of the six million Texans who qualify for legal aid and pro bono services in civil matters.[2] In particular, the vast majority of pro se petitioners are in family law cases.[3] In response to the problems regarding rule 145, including the one

---

[1]In one of these cases, the district clerk initially contested the affidavit of indigence but withdrew the contest before a hearing took place.

[2]"Significant decreases in funding to legal aid programs from reduced [IOLTA] revenue and federal funding cuts, combined with one of the highest poverty rates in the nation," means "fewer legal aid lawyers to help the growing number[ ] of [indigent persons needing legal] assistance." Texas Access to Justice Commission, *A Report to the Supreme Court Advisory Committee from the Texas Access to Justice Commission on the Court's Uniform Forms Task Force*, at 3 (Apr. 6, 2012) (footnote omitted), *available at* http://www.supreme.courts.state.tx.us/rules/pdf/SCAC_Access_to_Justice_report _040612.pdf (last visited Mar. 27, 2014).

[3]Brief for Appellees Odell Campbell, et al. at TAB A, *Wilder v. Campbell, et al.*, No. 02-13-00146-CV (Tex. App.—Fort Worth filed June 27, 2013). Over 57,000 family law petitioners proceeded pro se in 2013. *See* Office of Court

presented by this case, the Texas Access to Justice Commission has proposed substantially revising current rule 145. The Commission presented its proposed revisions, which specifically address the issue in this case among other problems, at the Supreme Court Advisory Committee's meeting on September 28, 2013, and the proposal is pending before the supreme court.[4]

In the meantime, months, and in some cases, years after their divorce decrees were final and no longer appealable, the district clerk's office has sent Appellees cost bills retroactively charging them for court costs, stamped in red as "past due," with the amount paid shown as "$0.00," and demanding full payment ($308.00 in Appellee Coleman's case) within ten days, in most cases followed by a "Clerk's Certification of Payment Default" threatening levies on Appellees' property for failure to make payment "immediately."[5]

The temporary injunction of which the district clerk complains by this appeal orders him to refrain from carrying out the policy and practice he acknowledges he instituted beginning in November 2010, seeking to collect court

Administration, *Annual Report for the Texas Judiciary, Fiscal Year 2013*, at 46, 48, http://www.txcourts.gov/pubs/AR2013/AR13.pdf (last visited Mar. 27, 2014).

[4]The transcript from the September 28, 2013 session of the Supreme Court Advisory Committee is available at http://www.supreme.courts.state.tx.us/ rules/scac/2013/transcripts/sc09282013.pdf (last visited on Mar. 27, 2014).

[5]Upon filing their petitions and affidavits of indigence, at least one of the indigent Appellees acting pro se had received receipts from the filing clerk showing that the total amount of their filing and service fees was "received" ($308.00 in Appellee Coleman's case) and "charged to PAUPER'S AFFIDAVIT."

3

costs he determined were owed by pro se petitioners in divorce cases such as Appellees, notwithstanding their uncontested affidavits of indigence and notwithstanding that none of the final divorce decrees contained findings that Appellees' actions had resulted in monetary awards sufficient under rule 145(d) for reimbursement to the county for costs.

## JURISDICTION

The majority accepts the district clerk's preliminary argument that the trial court in this case lacked jurisdiction to issue the temporary injunction because it was not the court that rendered the divorce judgments, as required by civil practice and remedies code section 65.023(b). *See* Tex. Civ. Prac. & Rem. Code Ann. § 65.023(b) (West 2008) (providing that "[a] writ of injunction granted to stay . . . execution on a judgment must be tried in the court in which the suit is pending or the judgment was rendered.").

I cannot agree. It has long been the rule that a plaintiff's good faith allegations are used to determine the trial court's jurisdiction. *See Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 502–03 (Tex. 2010), *cert. denied*, 131 S. Ct. 1017 (2011), (citing *Brannon v. Pac. Emp'rs Ins. Co.*, 148 Tex. 289, 294, 224 S.W.2d 466, 469 (1949)). Appellees' pleadings do not seek to stay execution on the judgments, attack the divorce judgments, question their validity, or present defenses that should have been adjudicated therein. Instead, Appellees allege that the district clerk has failed to perform his own nondiscretionary, ministerial duty to correctly tax costs in Appellees' divorce cases. Under rule 145(d), absent

4

a contest to an affidavit of indigence, the indigent party may be held liable for costs in one more circumstance, that is: "If the party's action results in monetary award, and the court finds sufficient monetary award to reimburse costs, the party must pay the costs of the action." Tex. R. Civ. P. 145(d). Appellees assert that they owe no costs because their affidavits of indigence were uncontested and because their divorce decrees contain no finding that they received a "sufficient monetary award to reimburse costs" as required by rule 145(d). Appellees thus assert that the district clerk improperly taxed and is improperly attempting to collect any court costs from Appellees and other similarly situated parties, in violation of rule 145(d).

A century-old line of cases establishes that section 65.023(b) (including its predecessors) only applies to a suit seeking an injunction "attacking the judgment, questioning its validity, or presenting defenses properly connected with the suit in which it was rendered, and which should have been adjudicated therein." *Kruegel v. Rawlins*, 121 S.W. 216, 217 (Dallas 1909), *writ ref'd*, 103 Tex. 86, 124 S.W. 419 (1910) (holding that injunction imposed by one court that did not attack validity of judgment of another court but merely sought to enjoin the clerk's execution on the judgment at the instance of one not entitled to have it enforced was not barred by statute); *see Zuniga v. Wooster Ladder Co.*, 119 S.W.3d 856, 860–61 (Tex. App.—San Antonio 2003, no pet.) (op. on reh'g) (holding injunction to prevent "misuse" of judgment of another court by execution against nonparty not barred by statute); *see also Shor v. Pelican Oil & Gas*

5

*Mgmt., LLC*, 405 S.W.3d 737, 747–48 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (holding statute did not defeat jurisdiction where applicants did not attack the merits of the judgment, did not question the validity of that judgment, and did not present defenses to that judgment that should have been adjudicated in the underlying proceeding).

Section 65.023(b) does not defeat jurisdiction here. It must be emphasized that Appellees do not attack the validity of the divorce judgments. Specifically, they do not complain of the language of the judgments upon which the district clerk relies that Appellees shall bear their own costs or pay their own costs. Appellees rely upon their uncontested affidavits of indigence to urge that there are no costs to be charged to them. As the trial judge succinctly stated at the conclusion of the hearing on the temporary injunction:

> THE COURT: The court costs will be paid -- or "the wife will pay for her court costs" does not create court costs in view of a 145 affidavit because there are no court costs. And she will pay for her court costs that doesn't create court costs where none exist. And none exist because of 145.
>
> MR. PONDER: Well, Your Honor, I --
>
> THE COURT: So that doesn't -- you know, that doesn't -- not only does it not create court costs, we don't know how much, if any, and there's not any.

*Carey v. Looney*, 113 Tex. 93, 251 S.W. 1040 (1923), relied upon by Appellees and cited by the majority, long ago stated the test as to when the predecessor statute to section 65.023(b) does not apply. A portion of the test is

6

quoted by the majority, but the rest of the statement of the test supports Appellees' position that the trial court has jurisdiction:

> On the other hand, if the court in which the injunction suit is brought has general jurisdiction over the subject-matter, and the relief may be granted *independently of the matters adjudicated in the suit whose judgment or processes thereunder are sought to be restrained, the statute has no application.*

*Id.* at 96, 251 S.W. at 1041 (emphasis added).

The majority focuses on the term "processes thereunder" in the above quote, reasoning that, to grant the relief requested by Appellees, the trial court "would clearly have to 'regulate the processes'" of taxing and collecting costs from Appellees under the judgments, thus defeating its jurisdiction. But *Carey* did not hold that the statute would defeat jurisdiction as to any and every injunction suit seeking to "regulate the processes" under a judgment obtained in a different court. *Id.* Rather, the opinion in *Carey* said that the statute would not prevent injunctive relief if the relief sought could be granted "*independently of the matters adjudicated in the suit*" under which the judgment or processes thereunder were sought to be restrained. *Id.* The injunctive relief granted against the district clerk here restrains only his taxing and collection of costs, independently of any matters adjudicated by the divorce decrees.

The principal cases relied on by the district clerk and the majority are *Evans v. Pringle*, 643 S.W.2d 116 (Tex. 1982), and this court's decision in *Hughes v. Morgan*, 816 S.W.2d 557 (Tex. App.—Fort Worth 1991, writ denied), for the proposition that one court lacks power to enjoin enforcement of another

7

court's judgment. Those cases are distinguishable because each involved an injunction that was *dependent* on the merits adjudicated (albeit by default) by a sister court's judgment. *See Evans*, 643 S.W.2d at 117–18 (holding predecessor statute to section 65.023(b) precluded injunction to stay writ of execution to collect post-judgment interest on the *amount* of a sister court's judgment); *Hughes*, 816 S.W.2d at 559 (setting aside temporary injunction that stayed *enforcement of the judgment* of another court while it was on appeal). Those cases provide no guidance here. Section 65.023(b) did not deprive the trial court of jurisdiction to grant the temporary injunction against the district clerk's nondiscretionary ministerial public duties of taxing and collecting court costs, which was independent of the validity or merits of the judgments of the divorce cases.

The divorce decrees assessed costs by boilerplate language in the decrees, which are judgment forms ordering either that costs of court "are to be borne by the party who incurred them," or that "[t]he Husband will pay for his court costs; the Wife will pay for her court costs."[6] At its core, the opinion of the

---

[6]Two of the judgments state on their face that they are copyrighted forms provided by "Texas Partnership for Legal Access." These do-it-yourself forms are available by link from http://www.txcourts.gov/pubs/pubs-home.asp to http://texaslawhelp.org/ (last visited on Mar. 27, 2014). Previous forms that were online when these Appellees filed contained the language used in their decrees, and are still available on some websites. *See* http://txdivorce.org/wp-content/uploads/2013/07/Div_No_Kids_Petition_Final-1.pdf. Two appear to be completely pro se and used forms but it seems unclear where these forms were obtained. The other three judgments appear to be standard forms utilized by

majority accepts the district clerk's stated justification for taxing costs against Appellees that this language in the judgments trumps rule 145. But rule 145 expressly states that uncontested affidavits of indigence serve "[*i*]*n lieu of* paying or giving security for costs of an original action." Tex. R. Civ. P. 145(a) (emphasis added). There is no conflict. The judgments do not determine the amount of costs owed; the district clerk does that, as further discussed below. Because Appellees' uncontested affidavits of indigence serve "in lieu of" payment of costs, and because the divorce decrees do not contain the findings required by rule 145(d) that Appellees received "sufficient monetary award[s] to reimburse costs," the district clerk's nondiscretionary ministerial duty required that he tax no amount of costs against Appellees.

Appellees' pro bono counsel from the Texas Advocacy Project argued Appellees' position at the temporary injunction hearing, making clear that Appellees are not attacking the judgments but, rather, are complaining of the district clerk's taxing any costs against them under rule 145:

> MS. DIFILIPPO: Yes. Please, Your Honor.
>
> We are not seeking the injunction on a permanent judgment order. In fact, if I understand Mr. Ponder's argument, we are seeking an injunction against the district clerk for not properly performing a nondiscretionary ministerial duty. So it had nothing to do with the seven named plaintiffs in their underlying proceedings and the judgment that came out of those underlying proceedings. That is not at all what our argument is.

---

Legal Aid of NorthWest Texas, which provided representation to those petitioners in their divorce cases.

. . . .

> -- we are not -- Let me reiterate that, we are not disputing the language in the divorce decrees that say he should pay his cost and she should pay her cost, which is what we believe the district clerk is relying on to send the bills out to indigent litigants. That is not our contention. We are not disputing that judgment. It has nothing to do with that. It's compelling enforcement of a nondiscretionary ministerial public duty.

## APPELLEES' INDIGENCE IS CONCLUSIVE

The supreme court has held that uncontested affidavits of indigence *conclusively* confer indigent status. Put simply, under rule 145, "[a]n uncontested affidavit of inability to pay is conclusive as a matter of law." *Equitable Gen. Ins. Co. v. Yates*, 684 S.W.2d 669, 671 (Tex. 1984). In *Yates*, the supreme court made clear that rule 145 is more than a procedural vehicle to allow an indigent litigant to proceed without payment of costs. The rule is a testament to the judiciary's strong commitment that indigent litigants are guaranteed a forum that is not to be blocked by financial burdens that would defeat that right. *See id.* In *Yates*, the trial court conditioned the grant of a new trial to an employee in a worker's compensation case on payment to the carrier for its attorney's fees in preparing and presenting its response. *Id.* at 670. Supported by an uncontested affidavit of indigence, Yates responded that he was unable to pay that amount. *Id.* Holding that Yates's uncontested affidavit of indigence was conclusive as a matter of law, the supreme court ruled that the trial court abused its discretion by denying him a new trial. *Id.* at 671. Recognizing that attorney's fees are not technically "costs," the supreme court looked to the spirit and purpose of rule

145, to guarantee open courts for those unable to pay costs, and rejected the condition imposed by the trial court that the indigent employee must pay the carrier's attorney's fees before being allowed to continue his suit:

> Although we recognize the general rule that attorney's fees are not costs, the assessed fees in the present case will be considered in light of Rule 145 and the rule's intended purpose to guarantee a forum to those unable to pay court costs. Accordingly, the trial court abused its discretion by imposing such a monetary condition in the face of an uncontested affidavit of inability to pay.

*Id.* (citations omitted).

*Yates*, in essence, held that a rule 145 uncontested affidavit of indigence trumped a trial court's express ruling imposing a monetary condition on the plaintiff's ability to continue his suit. The same reasoning must apply that a rule 145 uncontested affidavit of indigence trumps a district clerk's attempt to retroactively tax costs against an indigent party. The only exception is set forth in rule 145(d), mentioned above, which allows costs to be assessed despite an uncontested affidavit when a "party's action results in [a] monetary award . . . sufficient . . . to reimburse costs," and the rule further requires that the trial court must expressly so find. Tex. R. Civ. P. 145(d). There is no such finding in Appellees' divorce judgments.

As stated in *Yates*, the intended purpose of rule 145 is "to guarantee a forum to those unable to pay court costs." 684 S.W.2d at 671. Rule 145 is the key to the courthouse without which indigent parties are denied entry. Allowing a district clerk to tax costs against indigent litigants in divorce cases despite

11

uncontested affidavits of indigence, renders the guarantee of a forum under rule 145 illusory and locks the courthouse door for thousands of indigent parties in Texas who need it most.[7]  Statistics from the Office of Court Administration (OCA) show that 4,011 family law cases were filed in Tarrant County by pro se petitioners in fiscal year 2013[8] but no figures are available from OCA as to how many of those petitioners were indigent.

The district clerk cites no case law or statutory support for an exception allowing a district clerk or trial court to override rule 145 in divorce cases, and there is case law firmly enforcing the policies and provisions of rule 145 and *Yates* in the family law context.[9]  *See, e.g.*, *In re Villanueva*, 292 S.W.3d 236, 246 (Tex. App.—Texarkana 2009, orig. proceeding) (holding trial court abused its discretion by ordering Villanueva to pay advance costs and fees for attorney ad litem and social study administrator because, based on her uncontested affidavit of indigence, she was indigent as a matter of law and such orders effectively

---

[7]*See generally* Texas Access to Justice Commission, *supra* note 2.

[8]Office of Court Administration, *District Courts, Summary of Other Civil and Family Case Activity, September 1, 2012 to August 31, 2013*, at 7 http://www.courts.state.tx.us/pubs/AR2013/dc/10-OtherCivilAndFamilyActivityByCounty.pdf (last visited Mar. 27, 2014).

[9]The district clerk apparently chose pro se, indigent petitioners in divorce cases from which to attempt to collect costs on the theory that trial courts in dissolution of marriage or SAPCR cases have discretion to assess costs other than as provided in the civil rules, citing family code sections 6.708(a) and 106.001.  Tex. Fam. Code Ann. §§ 6.708(a) (West Supp. 2013), 106.001 (West 2014).  But neither those sections nor the cases cited speak to a trial court's ability to assess costs against an indigent party.

denied her a forum in which to dissolve her marriage and resolve custody issues, and "[t]hough undoubtedly driven by its duty to determine the best interest of the children, the trial court exercised its discretion in a manner inconsistent with the conclusive effect as to indigence provided by Rule 145 of the Texas Rules of Civil Procedure"); *Shirley v. Montgomery*, 768 S.W.2d 430, 434 (Tex. App.—Houston [14th Dist.] 1989, orig. proceeding) (holding trial court abused its discretion by striking wife's pleadings and prohibiting her from introducing any evidence at trial as sanctions for failing to pay $15,000 to guardian ad litem in light of evidence of wife's financial inability to pay the ad litem's fee and that it was in the best interest of childen for parent to have access to and availability of a forum); *Cook v. Jones*, 521 S.W.2d 335, 338 (Tex. Civ. App.—Dallas 1975, writ ref'd n.r.e.) (holding rule 145 uncontested affidavit of indigence relieved wife of obligation to pay sheriff's office for substituted service by publication so as to allow her meaningful access to the court, citing rule 145's purpose of allowing access to a forum for indigent litigants).

These cases illustrate the courts' continued commitment to the purpose and policy embodied in rule 145. Taxing of court costs in family cases, as in any other civil case, against a party deemed indigent as a matter of law under rule 145, absent any contest or findings as required by rule 145(d), flies in the face of the rule, the policy and purpose of guaranteeing access to a forum by indigent litigants, and "[t]he concept that courts should be open to all, including those who cannot afford the costs of admission, [as] firmly embedded in Texas

13

jurisprudence." *Higgins v. Randall Cnty. Sheriff's Office*, 257 S.W.3d 684, 686 (Tex. 2008); *see* Tex. Const. art. I, § 13.

I appreciate the district clerk's many responsibilities in managing his office with filings in what he estimates as over 59,000 cases over the past year for the many civil, criminal, and family district courts in this county and the need to collect costs to keep the judicial system open and running, especially through difficult financial times. His concern here is with a perceived conflict between the divorce decrees' assessments of court costs versus rule 145. But Appellees do not challenge those boilerplate adjudications of costs that are routinely assessed in thousands upon thousands of judgments of every type. The point is that the divorce decrees do not determine the *amount* of costs to be borne by Appellees.

"[T]he court's role is to adjudicate which party or parties is to bear the costs of court, 'not to determine the correctness of specific items." *Madison v. Williamson*, 241 S.W.3d 145, 158 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). As a result, a judgment may state that costs are assessed against a certain party, but it should not state the amount taxed as costs. *Id.*; *see also Williams v. Colthurst*, 253 S.W.3d 353, 363 (Tex. App.—Eastland 2008, no pet.). Conversely, the taxing of costs is not an adjudication by the court. *Reaugh v. McCollum Exploration Co.*, 140 Tex. 322, 325, 167 S.W.2d 727, 728 (1943). Tabulating the specific item amounts to be taxed as costs is a "'ministerial duty performed by the clerk.'" *Wright v. Pino*, 163 S.W.3d 259, 261 (Tex. App.—Fort Worth 2005, no pet.) (quoting *Pitts v. Dallas Cnty. Bail Bond Bd.*, 23 S.W.3d 407,

14

417 (Tex. App.—Amarillo 2000, pet. denied) (op. on reh'g)). It is the ministerial duty of the clerk that is at issue here, and I agree with Appellees and the trial court that the proper amount to be taxed to Appellees was no court costs, or "$0.00."

## NO ADEQUATE LEGAL REMEDY

The district clerk further argues that the temporary injunction was not appropriate because a motion to retax costs is an "adequate remedy at law" to correct the amount of costs he has now taxed to them under the judgments and should be filed by each Appellee in each court in which the costs accrued. *See Wood v. Wood*, 159 Tex. 350, 357–58, 320 S.W.2d 807, 812–13 (1959); *Reaugh*, 140 Tex. at 325, 167 S.W.2d at 728 (holding an error in taxing costs by the clerk may be corrected by the court upon motion of the injured party even after the case has been finally disposed of on appeal unless the right to retax costs has been lost in some manner).[10]

While a motion to retax costs may be an available remedy, I disagree that individual motions to retax filed by each Appellee and others similarly situated in the various family district courts constitute an *adequate* legal remedy here. *See Repka v. Am. Nat'l Ins. Co.*, 143 Tex. 542, 547, 186 S.W.2d 977, 980 (1945)

---

[10]The district clerk acknowledges that there is "no impediment" to each party filing a motion to retax costs in the court that rendered their divorce judgments because the timeliness of a motion to retax costs is linked to the time a demand is made for payment of costs, which he concedes was well after the divorce decrees were rendered and became final and plenary power had expired as to each of these Appellees.

15

(noting fact that complainant may have a remedy at law is not conclusive that such remedy is adequate and does not foreclose his right to equitable relief). As the district clerk acknowledges in his brief, for a remedy to be "adequate," it must be one that is complete, practical, and efficient to the prompt administration of justice as is equitable relief.

The number of individual motions to retax in each court for these and other similarly situated indigent litigants from whom the district clerk plans to extract costs could add up to thousands of such motions that would overwhelm the family law courts as well as the overworked and understaffed legal aid offices and volunteer pro bono attorneys. As previously noted, statistics published by OCA for Tarrant County show over 4,000 petitioners in family law cases who were pro se in the fiscal year ending August 31, 2013,[11] with similar numbers for at least the two prior years,[12] totaling more than twelve thousand potential motions to retax costs for those years alone that could conceivably be filed by pro se litigants who are indigent, and that number does not include indigent petitioners represented by legal aid or pro bono lawyers.

---

[11]Office of Court Administration, *supra* note 8.

[12]Office of Court Administration, *District Courts, Summary of Other Civil and Family Case Activity, September 1, 2011 to August 31, 2012*, at 7 http://www.courts.state.tx.us/pubs/AR2012/dc/10-OtherCivilAndFamilyActivityByCounty.pdf (last visited Mar. 27, 2014); Office of Court Administration, *District Courts, Summary of Other Civil and Family Case Activity, September 1, 2010 to August 31, 2011*, at 7 http://www.courts.state.tx.us/pubs/AR2011/dc/10-OtherCivilAndFamilyActivityByCounty.pdf (last visited Mar. 27, 2014).

A party can restrain the unlawful act of a public official when the act would cause irreparable injury or when that remedy is necessary to prevent a multiplicity of suits. *Tex. State Bd. of Exam'rs in Optometry v. Carp*, 162 Tex. 1, 5, 343 S.W.2d 242, 245 (1961); *Dallas Cnty. v. Sweitzer*, 881 S.W.2d 757, 769 (Tex. App.—Dallas 1994, writ denied) (op. on reh'g) (holding injunction proper against district clerk of Dallas County to prevent collection of various fees not authorized by law); *Garcia v. Angelini*, 412 S.W.2d 949, 951 (Tex. Civ. App.— Eastland 1967, no writ). The district clerk's proposal for filing individual motions to retax costs in each of these and other similar cases would undoubtedly create a multitude of proceedings.

It is firmly established that equity will assume jurisdiction for the purpose of preventing a multiplicity of suits, the principle being that the necessity of a multiplicity of suits in itself constitutes the inadequacy of a remedy at law, which confers equitable jurisdiction. *Repka*, 143 Tex. at 546, 186 S.W.2d at 979. In *Repka*, the court further stated, as particularly pertinent to this case:

> It would be a paradox to say that equity jurisdiction can be exercised to prevent a multiplicity of suits and at the same time say that a legal remedy is complete and adequate, although it leads to such multiplicity. To our minds, if a remedy at law, though otherwise complete and adequate, leads to a multiplicity of suits, that very fact prevents it from being complete and adequate.

*Id.* at 547–48, 186 S.W.2d at 980 (quoting *Rogers v. Daniel Oil & Royalty Co.*, 130 Tex. 386, 395, 110 S.W.2d 891, 896 (1937)).

17

This would apply to motions to retax as to these seven Appellees as well as to hundreds, if not thousands, of other similarly situated litigants. And as to Appellees' standing to maintain this consolidated suit on behalf of "others similarly situated," I agree with Appellees that they have standing to temporarily restrain the allegedly unauthorized action of the district clerk in systematically carrying out a policy and practice that he proposes to direct against all indigent petitioners who have filed uncontested affidavits of indigence, and that this remedy, due to the nature of the wrong to be addressed, will necessarily inure to the benefit of all similarly situated litigants by restraining his action, rather than forcing them to file motions and imposing that burden on the family courts' dockets.

In *Sweitzer*, the trial court granted an injunction against the district clerk of Dallas County in a suit challenging the legality of various types of fees that he had charged to the plaintiffs that they believed were not authorized by law. 881 S.W.2d at 761. Significantly, the plaintiffs sought the injunction on behalf of all litigants in Dallas County who paid similar fees, as well as for themselves. *Id.* at 769. The appellate court upheld the injunction, holding that "[a] party suing for all persons adversely affected by enforcement of a statute has standing to sue for an injunction" and that this claim gave plaintiff a "sufficient justiciable interest to maintain an action to enjoin the County from collecting fees not authorized by law." *Id.* I would hold that, under *Sweitzer*, Appellees have standing and a

18

justiciable interest to maintain this suit and to enjoin the district clerk from taxing and collecting costs not authorized by law.

I would affirm the temporary injunction on behalf of Appellees and all persons similarly situated with respect to the district clerk's policy and practice. I would hold that the 17th District Court has jurisdiction over Appellees' suit; that Appellees have standing and a justiciable interest in maintaining their action for themselves and all persons similarly affected; and that Appellees have demonstrated a probable right to recover and probable irreparable harm, with no adequate remedy at law. Because the majority does not so hold, I respectfully dissent.

/s/ Anne Gardner

ANNE GARDNER
JUSTICE

DELIVERED: April 3, 2014